MÉNDEZ, DEMANDANTE Y APELADA, *v.* MARTÍNEZ, DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Aguadilla en un caso sobre reconocimiento de hijos naturales.

No. 1016.—Resuelto en julio 30, 1914.

HIJOS NATURALES—ACCIÓN DE RECONOCIMIENTO—INSCRIPCIÓN DE LA MATERNIDAD.—La inscripción de nacimiento de los menores demandantes como hijos naturales de su madre, no impide que ejerciten la acción de reconocimiento como hijos naturales del causante del demandado.

ID.—ACCIÓN DE RECONOCIMIENTO—SUCESIÓN DEL SUPUESTO PADRE NATURAL.—
Tanto el artículo 199 del Código Civil Revisado, derogado por la Ley No. 73
de marzo 9, 1911, como el artículo 194 comprendido en la sección 1ª. de
dicha ley, autorizan la acción de reconocimiento bajo ciertas limitaciones
después de muerto el presunto padre; y siendo ello así, es obvio que la acción
procede contra la sucesión o el causa habiente del padre difunto.

ID.—ACCIÓN DE RECONOCIMIENTO—DETALLES MINUCIOSOS EN LA DEMANDA.—Ni
la ley exige, ni es necesario detallar minuciosamente en la demanda, los hechos
determinantes de la acción, pues esos detalles, si son precisos, podrán apor-
tarse al celebrarse el juicio y presentarse la prueba.

ID.—ACCIÓN DE RECONOCIMIENTO—LEY REGULADORA DEL DERECHO AL RECONOCI-
MIENTO—FECHA DEL NACIMIENTO DE LOS HIJOS.—El derecho de un hijo
natural al reconocimiento se regula por la ley vigente al tiempo de su
nacimiento.

ID.—ACCIÓN DE RECONOCIMIENTO—PRUEBA.—La prueba de la filiación debe ser
vigorosa y convincente.

ID.—ACCIÓN DE RECONOCIMIENTO—INSUFICIENCIA DE LA PRUEBA—RELACIONES CON
LA MADRE—SOSTENIMIENTO DE ELLA Y DE SUS HIJOS.—Las relaciones del
supuesto padre con la madre de los demandantes, la prestación de recursos
por aquél a ésta para su propio sostenimiento y el de sus hijos y el llamar
a veces hijos a los demandantes no son hechos bastantes por sí solos para
determinar el reconocimiento de hijos naturales, cuando esos hechos pueden
explicarse sin necesidad de admitir la paternidad y ser efecto de sentimientos
de benevolencia y afecto para con la madre y los hijos de ésta.

ID.—ACCIÓN DE RECONOCIMIENTO—INSUFICIENCIA DE LA PRUEBA—ESCRITO INDU-
BITADO—CONCUBINATO CON LA MADRE—POSESIÓN DEL ESTADO DE HIJOS
NATURALES.—En el caso de autos se resolvió que no se había presentado al
juicio escrito indubitado del padre en que expresamente reconozca a los
demandantes como hijos, ni se había probado que la madre viviera en con-
cubinato con el padre durante el embarazo y al tiempo del nacimiento de los
niños, ni que éstos hayan estado en posesión del estado de hijos naturales,
para lo cual es necesaria una continuación de hechos que presente a los deman-
dantes en relación no interrumpida de hijos naturales con el presunto padre.

ID.—ACCIÓN DE RECONOCIMIENTO—HIJOS NACIDOS EN DISTINTAS FECHAS.—Cuando
se trata de hijos nacidos en distintas fechas cuyo derecho al reconocimiento
se rige por distintas leyes, es necesario determinar con precisión en la prueba
los actos de reconocimiento relativos a cada uno de ellos y las fechas en que
tuvieron lugar.

ID.—ACCIÓN DE RECONOCIMIENTO—CARTAS DEL PADRE—AUTENTICIDAD DE LA
FIRMA.—Habiendo declarado uno de los testigos de la parte demandante que
la letra de las cartas presentadas como prueba se parecía a la del presunto
padre, aunque nó las firmas, mientras que otro testigo declara que la letra y
la firma de las cartas eran las que usaba el presunto padre, el cual en los
documentos públicos hacía otra rúbrica y en las cartas un rasgo, no puede
estimarse suficientemente comprobada la autenticidad de dichas cartas.

ID.—ACCIÓN DE RECONOCIMIENTO—PRUEBA AUTÉNTICA DE LA PATERNIDAD.—Te-
niendo en cuenta el espíritu de la Ley No. 73, de marzo 9, 1911, tendente a
exigir prueba más convincente de la filiación que la que anteriormente se
exigía por el artículo 189 del Código Civil, es necesario deducir que la prueba
auténtica de la paternidad exigida en dicha ley debe ser tal que pueda equi-

pararse a la determinada por un escrito indubitado de expreso reconocimiento, por la posesión continua del estado de hijo natural, y por el concubinato de la madre con el padre durante el embarazo y al tiempo del nacimiento del hijo.

Los hechos están expresados en la opinión.

El apelante compareció por escrito en nombre propio.

Abogado de la apelada: *Sr. Juan B. Soto.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

En 25 de noviembre de 1912 Cecilia Méndez, en concepto de madre y representante legal de sus menores hijos Pedro Angel y Laura María Méndez, produjo ante la Corte de Disdrito del Distrito Judicial de Aguadilla, demanda jurada contra Víctor P. Martínez y González, como sucesor de Víctor Martínez y Martínez, con súplica de que dichos menores sean declarados por sentencia hijos naturales reconocidos de Víctor Martínez y Martínez y se les otorguen los derechos consiguientes a esa declaración con arreglo al Código Civil aplicable al caso, inscribiéndose dicha sentencia en el registro civil al margen de la inscripción de nacimiento de Pedro Angel y Laura María.

Las alegaciones fundamentales de la demanda son las siguientes:

(*a*) Que Pedro Angel y Laura María nacieron en el pueblo de San Sebastián en 22 de noviembre de 1909 y 4 de noviembre de 1911, respectivamente, habiendo sido inscritos en el registro civil como hijos naturales de Cecilia Méndez.

(*b*) Que Pedro Angel y Laura María han sido el fruto de las relaciones amorosas que la demandante sostuvo con Don Víctor Martínez y Martínez, con quien vivió en concubinato bajo el mismo techo durante varios años.

(*c*) Que al tiempo de la concepción y parto de Pedro Angel y Laura María, la demandante y Víctor Martínez y Martínez se hallaban en actitud legal y sin impedimento alguno para contraer matrimonio, por ser la demandante soltera y viudo el Martínez.

(*d*) Que las relaciones amorosas de la demandante con Víctor Martínez y Martínez fueron continuas prodigando Martínez sus más tiernas caricias y solícitos cuidados a Pedro Angel y Laura María, teniendo a éstos el Martínez por hijos, y llamándolos así en sus entrevistas privadas y en sus conversaciones, habiendo estado dichos menores en la posesión continua del estado y derecho de hijos naturales de su padre Don Víctor Martínez mediante actos directos del padre, tales como vivir en el mismo hogar con ellos, suministrándoles alimentos lo mismo que a la madre durante la lactancia, y supliendo los gastos de vestido, calzado y demás indispensables para la vida.

(*e*) Que Víctor Martínez y Martínez falleció en San Sebastián en 26 de agosto de 1912 dejando por sucesión legítima a su hijo Víctor P. Martínez y González, habido en su matrimonio con Segunda González, la que había fallecido en Mayagüez en 4 de mayo de 1908.

A la demanda opuso la parte demandada la excepción previa de que los hechos en ella consignados no determinan una causa de acción, cuya excepción fué desestimada por orden de 9 de abril de 1913; y al contestar el demandado la demanda negó los hechos fundamentales de la misma, con excepción del relativo al fallecimiento y estado de viudo de Víctor Martínez y Martínez, alegando además como materia nueva otros hechos tendentes a desvirtuar las alegaciones determinantes del reconocimiento solicitado.

Celebrado el juicio en 16 de junio de 1913, la corte dictó sentencia, registrada en 3 de julio siguiente, declarando con lugar la demanda y en su consecuencia que los menores Pedro Angel y Laura María son hijos naturales reconocidos de Víctor Martínez y Martínez con derecho a usar el apellido de éste y a percibir la porción hereditaria que determina el vigente Código Civil, de acuerdo con la ley enmendatoria del mismo en la parte relativa a los hijos naturales, con los demás derechos que la ley otorga a los hijos naturales reconocidos y costas a cargo de la parte demandada, comunicándose dicha senten-

cia, luego que sea firme, al encargado del registro civil del pueblo de San Sebastián para su inscripción al margen de cada una de las inscripciones de nacimiento de los referidos menores. Contra esa sentencia interpuso el demandado recurso de apelación para ante esta Corte Suprema.

Alega la parte apelante como primer motivo del recurso que la corte inferior cometió error al desestimar por su orden de 9 de abril de 1913 la excepción previa de que los hechos no determinan una causa de acción.

Los motivos legales que sirven de fundamento a dicha excepción, son los siguientes:

*Primero.* Que el ejercicio de la acción de reconocimiento ha sido prematuro, pues el supuesto padre natural falleció en 26 de agosto de 1912 y la demanda fué radicada en noviembre del mismo año, resultando haberse ejercitado aquella acción antes del año del fallecimiento de Don Victor Martínez.

*Segundo.* Que habiendo sido inscritos en el Registro Civil de San Sebastián Pedro Angel y Laura María como hijos naturales de Cecilia Méndez, nacidos en 22 y 4 de noviembre de 1909 y 1911 respectivamente, no cabe cambiar su filiación por la de Víctor Martínez y Martínez, pues no pueden tener otro estado civil que el consignado en el registro.

*Tercero.* Que sólo el padre o la madre son los que personalmente pueden reconocer a sus hijos y no la sucesión de los padres, por tratarse de un acto personalísimo.

*Cuarto.* Que en la demanda no se han detallado minuciosamente los hechos demostrativos de la filiación, a saber, el tiempo del concubinato de Cecilia Méndez y Víctor Martínez, la duración de sus relaciones amorosas, y si el esposo de Segunda González y padre del demandado es el mismo que vivió en concubinato y llevó relaciones amorosas varios años con Cecilia Méndez, para poder llegar a la conclusión de si dichas relaciones fueran adulterinas o no.

Aunque nos parecen frívolos los motivos alegados en apoyo de la excepción previa, los rebatiremos brevemente en el mismo orden en que han sido expuestos. Al prescribir el

artículo 194 de nuestro Código Civil, tal como está comprendido en la sección 1ª. de la Ley No. 73 de 9 de marzo de 1911, que las acciones para .el reconocimiento de hijos naturales sólo podrán ejercitarse en vida de los presuntos padres o un año después de su muerte, salvas las excepciones que establece señaló ese término de un año para su ejercicio, sin que por tanto sea necesario esperar al vencimiento de ese año, con la particularidad de que en el presente caso, tratándose de menores, éstos, según una de dichas excepciones, podrían ejercitar la acción antes de que transcurran los primeros cuatro años de su mayor edad. La inscripción de nacimiento de los menores demandantes en el registro civil, como hijos naturales de Cecilia Méndez, no impide que ejerciten la acción de reconocimiento como hijos naturales de Don Víctor Martínez, para que obtenido el reconocimiento se haga también constar esa circunstancia en el registro en los términos que dispone la Ley No. 61 sobre la materia, aprobada en 9 de marzo de 1911. Tanto el artículo 199 del Código Civil Revisado, derogado por la Ley No. 73 de 9 de marzo de 1911, como el artículo 194 comprendido en la sección 1ª. de dicha ley, autorizan la acción de reconocimiento bajo ciertas limitaciones después de muerto el presunto padre; y siendo ello así, es obvio que la acción procede contra el sucesor o causahabiente del padre difunto. Ni la ley exige, ni es necesario detallar minuciosamente en la demanda los hechos determinantes de la acción, pues esos detalles, si son precisos, podrán aportarse al celebrarse el juicio y presentarse la prueba. *Ramos* v. *Sucesión Cabán,* 18 D. P. R., 533.

No cometió error, pues, la corte inferior al dictar su orden de 9 de abril de 1913, desestimando la excepción previa opuesta a la demanda por la parte demandada.

También alega el apelante que la corte inferior cometió error en la apreciación de las pruebas relativas al reconocimiento de Pedro Angel y Laura María.

La prueba documental de la parte demandante relativa a dicho reconocimiento consiste en veinte y tres cartas diri-

gidas por V. Martínez a Cecilia, 11 con fecha, y 12 sin fecha, llevando aquéllos las fechas de 8 de febrero de 1889 (acaso sea de 1898), 19 de octubre, 13 de noviembre, 26 de noviembre, 16 de diciembre y 22 de diciembre de 1898; 10 de diciembre de 1900; 4 de enero y 4 de noviembre de 1901, 10 de junio de 1903, y 6 de abril de 1907.

En la carta de 8 de febrero de 1889 ó 1898, acusa V. Martínez a Cecilia, recibo de una carta por la cual se entera de que ella y los chiquitos están buenos, y le anuncia la remisión de media docena de medias y de una orden para coger dinero. Se despide con afectos.

En la de 19 de octubre de 1898 expresa V. Martínez a Cecilia que sintió mucho marcharse sin verla; que por Lorenzo supo que seguía bien; que espera que siempre será celosa de su honradez y de su decoro; que ponga a Paco en la escuela con Ramón Vázquez; que le mandó 40 pesos y que si quiere escribirle le dé la carta a Lorenzo. Se despide con protestas de afecto para los nenes y para ella.

En la de 13 de noviembre de 1898 acusa V. Martínez a Cecilia recibo de una carta de 25 del mes anterior, y le dice que supo por Lorenzo que había salido bien de su trance, que siempre hacía por ampararla, que a su compadre le encargó le pasara un peso diario, que con un dependiente de Laurnaga le mandó 40 pesos y que eduque a los chiquitos y a las nenas. Termina despidiéndose con un abrazo y afectos.

En la de 26 de noviembre de 1898 V. Martínez acusa recibo de una carta de 15 de dicho mes, y dice que por Carolina y el compadre había sabido que la chiquita había estado mala. Que el martes fué día de su Santo y que si no pudo verla se acordó de ella y le compró su regalito, que lo que le manda es para comprar algunas cosas que necesite. Que no quiere que pase trabajos; que ponga a la escuela a Paquito y a María; que no tardará en ir a verla, y que mientras él viva velará por ella. Se despide con cariños para los chiquitos y con un abrazo para ella.

En la de 16 de diciembre de 1898 expresa V. Martínez a Cecilia que hace días no recibe carta, que sólo por Lorenzo y Lupe tiene noticias de ella y que los chiquitos estaban con tos ferina. Le anuncia la compra de una capa abrigo y la remisión de trajes para ella y los chiquitos. Confía en que Paquito no haya dejado de ir a la escuela para que en el día de mañana cele sus intereses. Se despide con protestas de afecto.

En la de 22 de diciembre de 1898 dice V. Martínez a Cecilia que se entera de la gravedad de la chiquita y pide a Dios que sus temores no sean confirmados; que siente sus sufrimientos; que ponga de su parte cuanto pueda para curar la niña; que Cancio la vea cuantos veces sea menester; que si necesita algo avise, y que espera saber de la chiquita. Se despide con memorias y abrazos.

En la de 10 de diciembre de 1900 le anuncia la remisión de dos billetes de $5 y le indica que puede ofrecer por el terreno de Basilio 900 pesos provinciales en tres plazos. Se despide con memorias para todos y protestas de afecto.

En la de 4 de enero de 1901 da V. Martínez a Cecilia consejos sobre administración de fincas y le envía felicitaciones.

En la de 4 de noviembre de 1901, V. Martínez acusa a Cecilia recibo de otra carta; le manifiesta no haber visto a José Cabrero para enviar un sombrero y zapatos y le remite dos billetes, uno de 10 pesos y otro de 5. Se despide con memorias para todos y protestas de afectos.

En la de junio 10 de 1903 manifiesta V. Martínez a Cecilia que al día siguiente iría a almorzar con ella, y le anuncia la remisión de una cajita. Se despide con protestas de afecto.

En la de 6 de abril de 1907, que es una carta sin dirección por un tal Pascasio Martínez a sus queridos padres, hay al dorso unos renglones en que V. Martínez manifiesta a Cecilia que al llegar al pueblo se encontró con otra de sus compadres, añadiendo que en la que recibió, le dicen que el niño sigue muy contento. Se despide con afectos.

Prescindimos de relatar el contenido de las cartas sin fecha, tendentes a demostrar que Víctor Martínez y Cecilia Mendez sostenían relaciones, que Martínez dispensaba protección a Cecilia y a sus hijos, y se tomaba interés por la salud de éstos y su educación, sin que en ninguna de esas cartas se nombre a los niños Pedro Angel y Laura María.

La prueba testifical de la parte demandante respecto del reconocimiento de que se trata, consiste en las declaraciones de varios testigos, las que extractamos a continuación. Esos testigos declararon el 16 de junio de 1913.

*Testigo Pedro Ríos Peña.*—Afirma primeramente que algunas veces vió entrar a Víctor Martínez en la casa de Cecilia Méndez, desde su establecimiento que quedaba a unos ocho metros de distancia, pero después dice y repite que nunca vió a Víctor Martínez dentro de la casa de Cecilia Méndez, por más que él lo veía desmontarse del coche y parar frente a dicha casa con dirección a la entrada. Víctor Martínez hará dos años, no muy a menudo, iba a su establecimiento a comprar dulces para Cecilia Méndez y sus niños, indicándole unas veces al testigo que los mandara a Cecilia Méndez y yendo otras veces los niños a buscarlos. Llevaban los dulces a Cecilia Méndez unas veces los niños, otras la sirvienta, y otras un muchacho. Víctor Martínez llevaba algunas cuentas con el testigo, como de dulces, cajas de galletas, coger una vez y pagar al otro día o de momento. Sólo sabe que Martínez iba a la casa de Cecilia Méndez y llevaba dulce que compraba en su establecimiento y los mandaba, lo que sabe porque la sirvienta llevaba al niño Pedro Angel y sabe que así se llamaba porque lo nombraba la servienta. Ignora la clase de relaciones que existieran entre Víctor Martínez y Cecilia Méndez y los hijos de ésta. Víctor Martínez no le dijo que tuviese hijos llamados Pedro Angel y Laura María, ni tampoco que tuviera concubina.

*Testigo Gerónimo Méndez Jiménez.*—Vió muchas veces a Víctor Martínez en la casa de Cecilia Méndez, a la que trataba como mujer propia, habiendo sido la última que lo vió

en la casa de Cecilia hará dos años. En una ocasión llevó a Cecilia por encargo de Don Víctor Martínez, hace cuatro años, un billete de $5. Vió llegar a Don Víctor a la casa de Cecilia Méndez, varias veces, pero solamente lo vió una vez dentro de ella por el año de 1910, en cuya ocasión Víctor y Cecilia ocupaban cada uno un sillón, teniendo Víctor al chiquito Pedro Angel en la falda o en la rodillas. Sólo sabe que Víctor Martínez visitaba la casa de Cecilia Méndez ignorando con qué fin lo hiciera. Víctor Martínez y Cecilia Méndez no vivía juntos en la misma casa.

*Testigo Joaquín Cardona.*—Fué carpintero de la casa de Víctor Martínez, y por vivir al costado de la de Cecilia Méndez vió muchas veces en ésta al Martínez. Martínez muchas veces mandó a buscarlo para hacer algún trabajo en la referida casa, y entonces él se sentaba en un sillón y Don Víctor en otro con Pedro Angel al que tocaba diciéndole "mi chiquito." Martínez muchas veces se quedaba en la casa de Cecilia Méndez. A veces llegaba viernes y se marchaba el domingo. Martínez trataba a la Cecilia como mujer propia, puesto que le decía, "Tráeme el chiquito para verlo," hará de esto tres años más o menos, y además le mandaba dinero para ella y sus hijos. Hará año y medio no ha visto nada entre Cecilia Méndez y Víctor Martínez. Cuando Cecilia Mendez vivía en la calle de Manuel Joaquín Cabrero el testigo vivía también en la misma calle, estando separadas ambas casas por un callejón de dos varas, y después se fué a vivir Cecilia a una casa de la Calle de Miraflores que le compró Don Víctor, la que vendió, yéndose a Calabazas sin que durante ese tiempo el testigo viera ni supiera nada con relación a Martínez y Cecilia. Cuando Martínez le pagaba sus trabajos le entregaba dinero para que se cobrara y lo que sobrara se lo entregara a Cecilia para sus hijos Pedro Angel y Laura María, hijos de Víctor Martínez. Sabe que éstos son hijos de Víctor Martínez porque cree que un hombre que tiene una mujer honrada como Cecilia, cuya casa a menudo visitaba Martínez, almorzando allí y estándose **en la misma**

casa, parece demuestra que la mujer es algo de él o los hijos son algo de él. Víctor Martínez y Cecilia Méndez no vivieron bajo un mismo techo por los años de 1908 al de 1912. Mientras el testigo trabajaba en la casa de Cecilia Méndez entraba en ella Víctor Martínez y vió que llamaba a los hijos Pedro Angel y Laura María y los besaba y acariciaba. Martínez le dijo que aquellos niños eran sus hijos. Martínez no le dijo que Pedro Angel era su hijo, pero se lo decía al chiquito, diciéndole "mi hijo." Todo lo que ha declarado pasó hace tres años más o menos, sin que pueda precisar ni el día, ni la semana, ni el mes. Además de Pedro Angel y Laura María tiene Cecilia Méndez dos hijos llamados Paco y Llullo y otros más. Sabe que Pedro Angel y Laura María son hijos de Cecilia Méndez pero ignora que fuesen hijos de Víctor Martínez.

*Testigo Juan Rodríguez Ramos.*—Vió a Víctor Martínez muchas veces en la casa de Cecilia Méndez. Al llegar Martínez se desmontaba de su coche, pasaba a la sala, se sentaba en el sillón, en seguida preguntaba por los niños, cogía a Pedro Angel en la falda, le pasaba la mano por la cabeza y por la cara y se lo daba a Cecilia. Al llegar decía; "Cecilia, ¿y los niños?" "¿Y Pedro Angel está bueno?" Mientras tenía los niños en la falda les decía "Mi hijo, mi hijo." Nunca oyó a Víctor Martínez echarles la bendición. Martínez suministraba recursos a Cecilia para la subsistencia de ella y de los niños. Varias veces al encontrarse Martínez con el testigo, refiriéndose a Pedro Angel y Laura María, le preguntaba "¿Y los niños, como siguen?" Solamente una vez vió a Víctor Martínez acariciando a los niños, hará como unos tres años más o menos. El niño que vió que acariciaba Martínez era el varoncito que Cecilia le trajo.

*Testigo Sixta Torres.*—Asistió a los partos de los hijos de Cecilia Méndez, Pedro Angel y Laura María, llamada por Don Víctor Martínez, quien le pagó $6 por cada parto. Martínez quería esos niños como a hijos. Cuando veía la chiquita le echaba la bendición diciéndole: "Hijita mía, Dios te

bendiga y te acompañe'' y lo mismo hacía con Pedro Angel.
Martínez solía ir a casa de la Cecilia los domingos, y se iba
lunes o martes.   Otras veces venía los jueves y se iba el lunes.
Entraba en la casa de Cecilia Méndez como dueño, dormía
en un cuarto y almorzaba y comía allí.   Cuando Cecilia estaba
recién parida dormía ésta en un cuarto y le arreglaban la
cama en otro a Don Víctor, y cuando ella estaba buena, los
dos dormían en su cuarto, y el chiquito en la cuna y ella en
un cuarto al lado de la chiquita.   Hace tres o cuatro años
que Cecilia tuvo a Pedro Angel, y hará dos años a Laura
María.   Víctor Martínez suministraba lo necesario para el
sostenimiento de Cecilia y sus hijos.   Vió a Víctor Martínez
llamar hijos a aquellos niños unas cien mil veces en la forma
siguiente:   Cogía a Pedro Angel y lo besaba y le pasaba la
mano por la cabeza, diciéndole a Cecilia: ''Cuida mucho de
este niño que si Dios quiere lo vamos a educar,'' y lo mismo
hacía con Laura María.   No recuerda haber manifestado a
persona alguna que a esos partos no la hubiera llamado Víc-
tor Martínez.  No recuerda haber dicho que dado el carácter
excéntrico de Don Víctor no le había hecho caricias a los
niños.   No recuerda haber dicho que Cecilia Méndez fué la
que le pagó los partos, y tampoco recuerda haber dicho que
no sabía quién era el padre de esos muchachos, si bien afirma
que el único con quien tuvo una entrevista sobre tal particu-
lar fué Bautista Medina.

*Testigo Irene Hernández.*—Estuvo colocada en la casa de
Cecilia Méndez y Víctor Martínez era quien le pagaba.   Mar-
tínez visitaba esa casa como dueño, cogía los chiquitos en la
falda, los acariciaba y los trataba como a hijos y les echaba
la bendición y después se sentaba en un sillón o se iba a la
cama de Cecilia Méndez y se recostaba.   Martínez trataba
de hijos a Pedro Angel y Laura María.   Víctor Martínez le
dijo que los niños eran de él, no recuerda en qué fecha, hará
3 ó 4 años; respecto a Pedro Angel y de Laura María no le
dijo nada Víctor Martínez.   Martínez suministraba dinero

para la subsistencia de los niños Pedro Angel y Laura María.

*Testigo Ramón Novoa Martínez.*—Víctor Martínez por dos veces suministró recursos a Cecilia, hará cosa de dos años, para atender a sus necesidades y las de los niños. Nunca hizo manifestación alguna respecto de los niños Pedro Angel y Laura María, únicamente como hacen los padres a los niños. Solamente vió a Martínez entrar dos veces en la casa de Cecilia Méndez. Nunca vió a Cecilia Méndez y a Víctor Martínez por la calle con los niños.

*Testigo Gerardo Pérez.*—En 6 de Diciembre de 1910, Víctor Martínez compró para Cecilia Méndez en su establecimiento mercantil un lavabo, un espejo y cuatro sábanas y le comisionó para que los mandara a casa de Cecilia Méndez, pagando Martínez el valor de la compra. No recuerda que en ninguna otra ocasión comprara nada Víctor Martínez para Cecilia Méndez, y no sabe qué clase de relaciones existieran entre ellos.

*Testigo Cecilia Méndez.*—Llevó relaciones con Víctor Martínez por espacio de cuatro a cinco años, visitándola Martínez tres o cuatro días en casi todas las semanas. Vivió maritalmente con Martínez, de cuya vida tuvieron los niños llamados Pedro Angel y Laura María. Martínez le pasaba a ella todo lo necesario para la vida. Cuando Martínez llegaba a la casa, el niño lo conocía y decía "Mamá, ahí está papá" y él le echaba la bendición y lo acariciaba. Sixta Torres la asistió en sus partos. Martínez le daba para ella y sus hijos, $8 cada ocho días, que tomaba en casa de Pedro Ríos. No sabe leer ni escribir, pero a menudo recibía cartas de Víctor Martínez que le leía otra persona, y otra persona también las contestaba.

La prueba testifical de la parte demandada es la siguiente:

*Testigo José Diepa Pérez.*—Ha trabajado varias veces como escribiente de Víctor Martínez y de su hijo el demandado, con quienes estuvo hará el espacio de cuatro o cinco años, habiendo vivido por algún tiempo en el barrio de Hato

Arriba con ambos.   Nunca vió allí a la mujer llamada Cecilia Méndez ni a niños llamados Pedro Angel y Laura María. Nunca supo que Víctor Martínez tuviera concubina alguna y dado su carácter no cree posible que tuviera relaciones ilícitas con alguna mujer.   Ignora que Víctor Martínez enviara cantidades de dinero a los supuestos hijos de que se trata. Era Martínez hombre retraído y muy serio y jamás le vió que fuera expansivo con alguien pues casi no hablaba.   Ha revisado y legajado la correspondencia de Víctor Martínez y no ha encontrado carta alguna de Cecilia Méndez y nunca el testigo escribió carta para Cecilia Méndez que firmara Víctor Martínez.

*Testigo Emiliano Beauchamps.*—Por los años de 1908 al 1912 vivía en San Sebastián barrio de Hato Arriba con Don Víctor Martínez como mayordomo de éste y en el mismo cuarto.   Durante ese tiempo no vió entrar ni vivir en la casa a persona alguna que se llamara Cecilia Méndez.   Víctor Martínez era de carácter muy serio y jamás el testigo vió que mujer alguna traspasara los umbrales de la puerta de la casa, lo que no hacía ni aún la cocinera.   Nunca vió allí a los niños llamados Pedro Angel y Laura María.   Víctor Martínez no mandó dinero a Cecilia Méndez por conducto del testigo y en las conversaciones que por la noche tenían no le dijo que tuviera hijos ilegítimos.   No le conoció concubina y no lo creía capaz de tenerla.   En los libros de la hacienda no figura cuenta alguna con Joaquín Cardona, y como pagador de la hacienda no recibió encargo de entregar dinero a Cecilia Méndez ni a Joaquín Cardona.

*Testigo Juan Bautista Medina.*—Vivió en San Sebastián desde 1908 a 1912 y conoció a Víctor Martínez y a Cecilia Méndez y también a los hijos de ésta Pedro Angel y Laura María.   No le conoció relaciones amorosas a Víctor Martínez ni de casado ni de viudo, y su carácter serio era contrario a esas expansiones.   De los diferentes encargos que le hizo Víctor Martínez ninguno fué para Cecilia Méndez ni para los hijos de ésta.   Hacia el 1 de junio de 1913 le dijo Sixta

Torres en conversación, que si bien había parteado a Cecilia Méndez cuando nacieron Pedro Angel y Laura María, Cecilia era quien la había llamado, ignorando que Víctor Martínez fuera, el padre de esos niños, pues si lo hubiera sabido lo hubiera puesto en el registro civil, cuyas manifestaciones fueron hechas por la Sixta expontáneamente a preguntas que le hiciera el testigo.

Ante los méritos probatorios que dejamos expuestos y a la luz de la ley y jurisprudencia aplicables al caso, veamos ahora si se ha demostrado suficientemente el reconocimiento de Pedro Angel y Laura María como hijos naturales de Víctor Martínez, causante del demandado.

Las certificaciones del registro civil traídas al juicio muestran que Pedro Angel nació en 22 de noviembre de 1909 y Laura María en 4 de noviembre de 1911.

El derecho al reconocimiento de Pedro Angel debe regularse por el artículo 189 del Código Civil Reformado, mientras que igual derecho por lo que toca a la niña Laura María, debe regularse por el artículo 193 comprendido en la sección 1ª. de la Ley No. 73 de 9 de marzo de 1911, que enmendó aquel artículo.

El artículo 189 del Código Civil Reformado dice así:

"Artículo 189.—El padre está obligado a reconocer al hijo ilegítimo en los casos siguientes:

"1. Cuando exista escrito suyo indubitado en que expresamente reconozca su paternidad.

"2. Cuando pública o privadamente le tenga por hijo suyo o le haya llamado tal en conversación o se ocupe de su educación y sostenimiento.

"3. Cuando la madre fué conocida viviendo en concubinato con el padre al tiempo del embarazo o nacimiento del hijo, o cuando éste haya nacido llevando sus padres relaciones amorosas."

El artículo que acabamos de transcribir ha estado vigente hasta que se aprobó la Ley No. 73 de 9 de marzo de 1911, la

cual en el artículo 193, comprendido en su sección 1ª., en la parte pertinente, dice así:

"Artículo 193.— * * *.

"El padre está obligado a reconocer al hijo natural:

"1. Cuando exista escrito suyo indubitado en que expresamente reconozca su paternidad.

"2. Cuando el hijo se halle en la posesión continua del estado de hijo natural del padre demandado, justificada por actos del mismo padre o de su familia.

"3. Cuando la madre fué conocida viviendo en concubinato con el padre durante el embarazo y al tiempo del nacimiento del hijo.

"4. Cuando el hijo pueda presentar cualquier prueba auténtica de su paternidad.

"* * * * * * *"

La prueba de la filiación debe ser vigorosa y convincente. *Negueruela et al.* v. *Somohano,* 16 D. P. R., 692.

En el presente caso dista mucho de ser vigorosa y convincente la prueba de la parte demandante.

No ha venido al juicio escrito indubitado de Víctor Martínez en que expresamente reconozca como hijos suyos a Pedro Angel y Laura María. Tampoco hay prueba de que la Cecilia Méndez viviera en concubinato con Martínez durante el embarazo y al tiempo del nacimiento de esos niños, ni de que éstos hayan estado en posesión del estado de hijos naturales de Víctor Martínez, pues la prueba no ofrece una continuación de hechos que presenten a dichos niños en la relación no interrumpida de hijos naturales del Martínez. Las declaraciones de los testigos son vagas e indeterminadas sobre tal particular.

Aunque se admitiera por el mérito de las declaraciones de algunos de los testigos que Víctor Martínez sostenía relaciones con Cecilia Méndez y le prestaba auxilios para su propio sostenimiento y el de sus hijos Pedro Angel y Laura María, acariciando a éstos y llamándolos a veces hijos, sobre todo al Pedro Angel, no por ello llegaríamos a la conclusión de que Pedro Angel y Laura María eran hijos naturales de Víc-

tor Martínez y tenidos por éste como tales. La conducta de Víctor Martínez con Cecilia Méndez y sus hijos puede explicarse sin necesidad de admitir su paternidad, y ser efecto de sus sentimientos de benevolencia y afecto para con Cecilia y su familia, máxime si se tiene en cuenta el contenido de algunas de las cartas que la demandante ha presentado como evidencia, en las que con fechas muy anteriores al nacimiento de Pedro Angel y Laura María el Martínez mostraba interés por otros chiquitos de la Cecilia, se interesaba por la salud y educación de éstos, y además de socorrerla le ofrecía velar por ella mientras viviera. Hay testigos que se contradicen en el acto de declarar; a otros no se les ha pedido razón de sus afirmaciones para mejor apreciar su credibilidad, como sucede respecto de Sixta Torres al afirmar ésta que Víctor Martínez llamó hijos a los niños de que se trata unas cien mil veces; y lo que es más importante aún, tratándose como se trata de dos hijos que reclaman el reconocimiento de su filiación, reconocimiento subordinado a leyes diversas, no se ha logrado determinar con precisión los actos de reconocimiento relativos a cada uno de ellos y las fechas en que tuvieron lugar.

No cabe aceptar la autenticidad de las veinte y tres cartas presentadas por la parte demandante como demostrativas de las relaciones amorosas de Víctor Martínez con Cecilia Méndez, pues esas cartas fueron puestas de manifiesto al testigo de la demandante Ramón F. Martínez para su reconocimiento después de haber manifestado que conocía la letra y firma de Martínez, y expresó que la letra de dichas cartas se parece a la de Martínez, pero no las firmas, entendiendo por firma la letra y la rúbrica; y otro testigo de la misma parte demandante, Aureo Antonio Sánchez, después de afirmar que era protocolista del Notario Carlos Franco Soto y que en ese protocolo hay muchos documentos otorgados por Víctor Martínez y Martínez, los cuales había visto, siendo por tanto conocedor de su letra, afirmó que la letra y la firma de las cartas eran las que usaba Víctor Martínez, el cual en los documentos públicos hacía otra rúbrica y en las cartas un rasgo.

No se presentaron a la corte documentos con letra y firma indubitadas de Víctor Martínez para su cotejo con las cartas de que se trata a fin de que mediante declaraciones de testigos competentes se viniera en conocimiento de la identidad o semejanza de la letra y firma de Martínez que aparecían en las cartas, cuya autenticidad por consiguiente quedó sin comprobación satisfactoria.

Pero es que, supuesta y no admitida la autenticidad de las cartas en cuestión, ellas demostrarían que Martínez llevó relaciones con Cecilia Méndez desde 8 de febrero de 1898, fecha de la primera carta, hasta 6 de abril de 1907, fecha de la última, es decir por un período de nueve años; pero si se sostiene que las cartas sin fecha fueron escritas con posterioridad al año 1907, por el tiempo de la concepción y nacimiento de Pedro Angel y Laura María, entonces las relaciones sostenidas por Martínez con la Cecilia Méndez mediante correspondencia escrita hubieran sido de duración muy superior a aquel período.

Lo anteriormente expuesto, bajo la hipótesis de autenticidad de las cartas, está en abierta contradicción con la afirmación jurada de Cecilia Méndez de que llevó relaciones con Martínez por espacio de cuatro o cinco años. Tampoco ella se ha cuidado de probar que las cartas sin fecha se refieren al tiempo en que fueron concebidos o nacieron los niños Pedro Angel y Laura María, ni de presentar para su examen al testigo o testigos por cuyo conducto recibía las cartas, ni a la persona que según afirma se las leía.

Aun más, la Cecilia afirma en su declaración que Martínez le pasaba $8 cada ocho días, que tomaba en la casa de Pedro Ríos, y no obstante haber presentado como testigo al Pedro Ríos, no trató de corroborar dicho particular interrogando al efecto a Ríos, quien sólo expresa, contradiciendo en cierto modo a la Cecilia, que Martínez compraba dulces para ella y sus niños, y llevaba algunas cuentas con el testigo como de dulces, cajas de galletas, coger una vez y pagar al otro

día o de momento, sin hacer mención de la cuenta de los $8 que cada ocho días tomara Cecilia en su casa.

La veracidad de la testigo Sixta Torres fué impugnada por medio del testigo del demandado Juan Bautista Medina, a quien anteriormente había hecho manifestaciones contrarias a las que hizo en el juicio, manifestaciones que no negó la Sixta de un modo categórico, pues se limitó a expresar que no las recordaba, por más que está conforme en que había hablado con el Medina.

Debiendo regularse como antes hemos indicado el derecho del Pedro Angel por el artículo 189 del Código Civil Reformado vigente en la fecha de su nacimiento y el de Laura María por el artículo 193 comprendido en la sección 1ª. de la Ley No. 73 de 9 de marzo de 1911, cuya ley comenzó a regir antes de su nacimiento, ha debido tenerse en cuenta por la parte demandante la diversidad de los preceptos de uno y otro artículo para la propuesta de la evidencia que había de determinar la filiación solicitada.

Repetimos que no hay prueba vigorosa y convincente del reconocimiento de Pedro Angel y Laura María.

La falta de prueba respecto de Laura María es mucho más notable que con relación a Pedro Angel. Además de no serle aplicables los tres primeros casos del artículo 193 de la sección 1ª. de la Ley No. 73 de marzo 9, 1911, tampoco está comprendida en el caso 4º., pues no ha presentado prueba auténtica de la paternidad de Víctor Martínez. No define ese artículo cuál sea la prueba auténtica a que se refiere, pero por el espíritu que lo informa tendente a exigir prueba más convincente de la filiación que la que anteriormente se exigía por el artículo 189, y por el principio *noscitur a sociis,* bien podemos deducir que esa prueba auténtica debe ser tal que pueda equipararse a la determinada por un escrito indubitado de expreso reconocimiento, por la posesión continua del estado de hijo natural, y por el concubinato de la madre con el padre durante el embarazo y al tiempo del nacimiento del hijo.

Acaso en un nuevo juicio podrían aportarse elementos probatorios vigorosos y convincentes de la filiación de Pedro Angel y Laura María. Los que han venido al presente juicio no nos satisfacen.

En el juicio se tomaron varias excepciones por la parte demandada y apelada, y esas excepciones han sido alegadas también para que se revoque la sentencia apelada; pero creemos innecesario ocuparnos de ellas, procediendo como procede la revocación de dicha sentencia por error en la apreciación de las pruebas.

Es de revocarse la sentencia apelada y ordenarse la celebración de un nuevo juicio.

> *Revocada la sentencia apelada y ordenada la*
> *celebración de un nuevo juicio.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro y Aldrey.

El Juez Asociado Sr. Hutchison no formó parte del tribunal en la vista de este caso.