EL PUEBLO DE PUERTO RICO, demandante y apelado, v.
LUIS MILLÁN, acusado y apelante.

No. 2545.—*Visto:* Noviembre 10, 1925. *Resuelto:* Julio 29, 1926.

1. DERECHO PENAL—APELACIÓN Y ERROR, Y CERTIORARI—REVISIÓN—CUESTIONES DISCRECIONALES—CUESTIONES RELATIVAS A LA ADMISIÓN DE PRUEBAS—INTERROGATORIO DE TESTIGOS DURANTE EL JUICIO—ADMISIÓN DE PREGUNTAS CAPCIOSAS EN EL EXAMEN DIRECTO.—Alegado como error el permitir preguntas capciosas en el interrogatorio directo de un testigo, si el apelante no especifica cuáles son esas preguntas, el Supremo no escudriñará los autos en busca de las preguntas que el apelante pueda considerar capciosas.

2. VIOLACIÓN—PROCESO Y CASTIGO—JUICIO Y REVISIÓN—APELACIÓN—REVISIÓN—ERRORES NO PERJUDICIALES.—En proceso por violación de una menor de 14 años el permitir la pregunta "¿ella quiso ir?" hecha a un testigo mientras éste declaraba que el acusado bajó la niña de un *truck* y se la llevó a un pasto, *se resolvió* que, por no ser de influencia en el caso que ella quisiera ir con el acusado o no, no era perjudicial.

3. DERECHO PENAL—EVIDENCIA—ACTOS Y DECLARACIONES DE CONSPIRADORES Y CO-ACUSADOS—CONDUCTA DE ESTOS DESPUÉS DE LOGRADO SU OBJETO—DECLARACIONES EN PRESENCIA DEL CO-ACUSADO.—En proceso por violación, la declaración por una persona respecto a manifestaciones hechas por otra—también acusada y condenada por violación de la misma niña—en presencia del acusado es admisible si dichas manifestaciones no están faltas de conexión con la conducta del acusado al ser hechas por dicha otra persona a presencia del mismo.

4. VIOLACIÓN—PROCESO Y CASTIGO—EVIDENCIA—EVIDENCIA ADMISIBLE—EDAD DE LA PERJUDICADA—EVIDENCIA ORAL RESPECTO A LA EDAD.—En un proceso por violación de una menor de 14 años, es admisible evidencia oral para probar la edad de la ofendida.

5. DERECHO PENAL—APELACIÓN Y ERROR, Y CERTIORARI—REVISIÓN—ERRORES NO PERJUDICIALES—ADMISIÓN DE PRUEBA OBJETADA—PRUEBA SOBRE HECHOS ESTABLECIDOS YA POR OTRA PRUEBA.—La no admisión de una repregunta hecha por la defensa a un testigo no constituye error cuando, con anterioridad a dicha pregunta, ya el testigo la había contestado a la misma defensa que la hizo.

6. DERECHO PENAL—APELACIÓN Y ERROR, Y CERTIORARI—REVISIÓN—CUESTIONES DISCRECIONALES—MOCIÓN SOBRE ABSOLUCIÓN PERENTORIA. — Atendidos los fundamentos de la moción de absolución perentoria hecha en el caso de autos así como la prueba, *se resolvió* que la negativa de dicha moción no fué errónea.

7. Violación— Proceso y Castigo— Juicio y Revisión— Instrucciones de la Corte al Jurado—Corroboración de la Ofendida.—Examinadas las instrucciones de la corte inferior relativas a la corroboración de la declaración de la ofendida y a la edad de ésta, *se resolvió* no eran erróneas.

8. Derecho Penal—Apelación y Error, y Certiorari—Revisión—Errores no Perjudiciales—Cuestiones Relativas a las Instrucciones—Negativa a Dar Instrucciones Solicitadas.—Examinadas las instrucciones relativas a complicidad que, solicitadas por la defensa, negó la corte inferior; descansando dichas instrucciones en que un testigo del pueblo era cómplice del acusado y apareciendo claro que tal testigo no era tal cómplice, *se resolvió* la corte inferior no cometió error alguno al negar las mencionadas instrucciones.

Sentencia de *Tomás Bryan,* J. (Aguadilla), condenando al acusado por delito de violación. *Confirmada.*

*Buenaventura Esteves,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

Luis Millán fué acusado de haber violado la niña de menos de 14 años de edad Elisa Vélez, que no era su esposa, apareciendo de la prueba que a eso de las nueve de la noche de uno de los días del mes de noviembre de 1923 Elisa Vélez abandonó la casa de su madrina Rosa Marrero, donde vivía, porque la regañó y se dirigía a la casa de una tía suya, siendo encontrada en un camino de un barrio de Lares por Luis Millán, Francisco Acevedo, Adelís Hernández y Luis Acevedo, que iban en un *truck* y la montaron en él y que más tarde al llegar al sitio de destino del *truck* Luis Millán la bajó de él y se la llevó a un pastito donde tuvo contacto carnal con ella llevándola después al *truck* donde la dejó y se marchó, habiendo tenido después en esa noche contacto carnal con Elisa Vélez en el *truck* Francisco Acevedo y luego Adelís Hernández.

[1, 2] Condenado Luis Millán por el delito que se le imputó estableció este recurso de apelación contra la sentencia y contra la resolución que le negó un nuevo juicio y para sostener sus recursos alega como primer motivo que fué error de la corte inferior permitir al fiscal que hiciera en el juicio preguntas capciosas en su interrogatorio directo a Elisa Vé-

lez en violación del artículo 153 de la Ley de Evidencia, pero
como el apelante no especifica cuáles son esas preguntas, no-
sotros no escudriñaremos los autos en busca de las pregun-
tas que él pueda considerar capciosas.   La única pregunta
hecha a otro testigo, Adelís Hernández, que se alega ser cap-
ciosa es la siguiente: "¿Ella quiso ir?"  Ese testigo estaba
declarando que Luis Millán bajó a la niña del *truck* y se la
llevó a un pasto ocurriendo entonces la pregunta "¿Ella
quiso ir?", que aunque sea capciosa no es perjudicial para
el acusado porque imputándosele la violación por ser la niña
de menos de 14 años no era de influencia en el caso que ella
quisiera ir con él o no.

 [3] El segundo motivo de error se funda en haber permi-
tido la corte inferior que el testigo Domingo Quiles relatara
ante el jurado ciertas manifestaciones hechas por Francisco
Acevedo.   Esas manifestaciones fueron que la mañana si-
guiente a la noche en que ocurrieron esos hechos, Francisco
Acevedo hablaba de la muchacha con varias personas reuni-
das en el *truck* y dijo que esa noche habían gozado mucho,
que había estado la sangre que daba al pecho, y entonces él
se la llevó al *truck*, Francisco Acevedo, y entonces la mucha-
cha se quejó y dijo que no lo aguantaba; que cuando decía
eso Francisco Acevedo en voz alta el acusado Millán estaba
allí cerca arreglando el *truck* y podía oir la conversación
y se sonreía.

El apelante sostiene que las manifestaciones hechas por
Acevedo y declaradas por Quiles no eran admisibles porque
no hacen referencia a él ni fueron hechas en su inmediata
presencia.   Sin embargo, de los autos aparece que fueron
hechas por Acevedo en voz alta, que el apelante estaba cerca,
que podía oirlas y que se sonreía cuando fueron hechas por
lo que no puede sostenerse que las manifestaciones de Ace-
vedo no fueron hechas en su inmediata presencia; manifes-
taciones que no se refieren solamente a Acevedo pues dijo,
en plural, que aquella noche habían gozado mucho, sin que
Millán hiciera objeción y antes al contrario se sonreía, lo

que puede considerarse como asentimiento a dichas manifestaciones; y esas manifestaciones de Acevedo, que también fué acusado y condenado por violación de esa niña, eran admisibles porque no estaban faltas de conexión con la conducta del apelante cuando fueron hechas por Acevedo. En el caso de *People* v. *Mallon,* 103 Cal. 514, había sido permitido a dos testigos que declarasen ciertas manifestaciones hechas por Foran, que había sido acusado con Mallon de ataque para cometer robo, y se declaró lo siguiente:

". . . . Esta declaración, por sí sola y sin relación alguna con la conducta del apelante al tiempo de hacerse las supuestas manifestaciones, sería, sin duda, claramente de referencia e inadmisible. Pero es una regla ya establecida de derecho que si bien una manifestación hecha en presencia del acusado no es admisible por ser prueba de un hecho narrado en tal manifestación, es admisible, primariamente con el fin de demostrar que el acusado asintió a tal manifestación, ya por consentimiento expreso, o con su silencio, o con tal conducta que claramente implicaba tal consentimiento. (People v. McCrea, 32 Cal. 98; People v. Estrado, 49 Cal. 171.) Tal testimonio debe, sin duda, recibirse con cautela; si no es seguido por alguna prueba de la conducta del acusado debe eliminarse; y si el abogado del acusado lo solicita (lo que no se hizo en este caso) la corte debe instruir al jurado que tal manifestación se admite únicamente para probar el fin arriba indicado. Pero la corte no comete error al admitir tales manifestaciones desde el primer momento. En el presente caso creemos que aparece claramente cuál era la conducta del acusado cuando Foran hizo sus manifestaciones, las que éste no negó. Durante la declaración de Crockett acerca de tales manifestaciones y después del abogado del acusado presentar una objeción, la corte dijo: 'Asumo que se sabrá lo que este acusado dijo e hizo en el curso de la conversación;' y la corte entonces preguntó al testigo: '¿Qué dijo este acusado?' a lo cual el testigo contestó: 'Él no dijo nada cuando le dijeron eso,' y después el testigo dijo 'Estábamos todos formando un grupo. El acusado, Mallon, no dijo nada.' Después del testigo Donovan declarar a ciertas manifestaciones hechas por Foran al acusado, dijo que 'éste no contestó nada.' Y, además, que cuando el testigo le preguntó al acusado '¿Tú estabas allí?' éste le contestó 'Te imaginas que soy tan tonto que te voy a decir que estaba allí?'"

[4] Otra alegación del apelante es que no habiéndose demostrado debidamente que el nacimiento de Elisa Vélez no está inscrito en el registro civil de Lares por ser insuficiente la certificación del registro de no aparecer inscrito y también la certificación del cura párroco de Lares de no constar en sus libros el acta de su bautismo, que según el apelante es el mejor medio de prueba de su edad de acuerdo con el artículo 320 del Código Civil, no debió ser admitida prueba oral como evidencia secundaria para probar su edad. Sin embargo, en el caso de *El Pueblo v. Díaz,* 19 D.P.R. 522, que era un caso por homicidio, se planteó esa cuestión y este Tribunal Supremo dijo que la declaración de los médicos que vieron el cadáver del interfecto era la mejor prueba de su muerte independientemente de cualquier certificación del registro civil; en *El Pueblo v. Ruiz,* 31 D.P.R. 312, por delito de acometimiento y agresión, también se hizo la misma alegación que en el presente caso y declaramos que el artículo 320 del Código Civil no era aplicable en casos de esa naturaleza y que se podía probar con testigos que el acusado era mayor de 21 años; y en Louisiana, donde rige un Código Civil como el nuestro, en el caso de *State v. Romero,* 117 La. 1603, 42 So. 482, en el que se trataba de un delito cometido con una mujer menor de 16 años, se dice en el *syllabus* que la evidencia oral de la edad de la mujer no es secundaria y que no es tal por el hecho de que pueda existir en un registro su partida de bautismo. En vista de lo expuesto no existe el error alegado y estimamos que la prueba oral fué suficiente para demostrar que la perjudicada en este caso tenía menos de 14 años de edad cuando fué cometido el delito imputado al apelante, pues el perito doctor Seín manifestó que por el examen que hizo de ella entendía que tenía de 12 a 15 años de edad, sin poder afirmar que no tuviera menos de 14 años; la testigo Rosa Romero declaró que vino por primera vez a esta Isla en 1910, casada con don Celedonio Marrero, a vivir en el barrio de Mirasol de Lares en

una finca de su marido; que muy cerca de la casa que habitaba vivían los padres de Elisa, la que nació en mayo siguiente de 1911 y fué bautizada en la finca por el cura de Lares al mismo tiempo que otra niña llamada Prudencia Ruiz que había nacido allí un mes antes y que fué madrina de ambas niñas. También Juana Rodríguez declaró que en esa época vivía en la casa de Celedonio Marrero y asistió como comadrona al nacimiento de Elisa y un mes antes al de Prudencia Ruiz; que Elisa nació en mayo de 1911, lo que recordaba por una venta que hizo, declaraciones que están corroboradas con certificación del registro civil creditiva de que Prudencia Ruiz nació el 28 de abril de 1911, por lo que Elisa tenía 12 años de edad en el 1923 en que se dice haber sido cometida su violación y por tanto que era menor de 14 años.

[5] El cuarto error alegado se funda en no haberse permitido cierta repregunta a una testigo y en haber sido negada la moción del acusado sobre absolución perentoria. A la testigo Juana Rodríguez se le repreguntó por la defensa del acusado si recordaba cuándo ocurrió el temporal de San Ciriaco, después de haber declarado que había ido a vivir al barrio de Mirasol de Lares en esa época y también se le preguntó en qué año habían tenido lugar los terremotos en esta Isla, repreguntas que no fueron permitidas y que alega ahora tenían por objeto demostrar que su declaración era amañada y que su credibilidad dejaba mucho que desear. Esa testigo había declarado antes a la misma defensa que fué a vivir al barrio de Mirasol de Lares el mismo año de la tormenta de San Ciriaco que sabe fué el 8 de agosto pero no se acordaba del año, y habiendo manifestado que declaró en otro caso contra Francisco Acevedo se le interrogó si recordaba que no supo contestar cuándo fué el ciclón de San Ciriaco, se opuso el fiscal a esa pregunta y sostenida su oposición por la corte se tomó excepción a esa resolución porque la defensa quería saber por qué decía que era el 8 de agosto. Es un hecho histórico del que tomamos conocimiento judi-

cial que el ciclón llamado de San Ciriaco ocurrió el 8 de agosto de 1899 y como la testigo había manifestado ya que no recordaba el año en que tuvo lugar aunque sí el mes y el día, no hubo error en negar dicha pregunta toda vez que había sido contestada antes. La repregunta referente a los terremotos no fué negada por la corte y fué contestada por la testigo diciendo que no se acordaba qué año ocurrieron.

[6] La moción de absolución perentoria se fundó en que no se había probado la edad de la perjudicada en la forma que exige la ley; que la declaración de la perjudicada y el testigo Adelís Hernández, que el apelante considera como cómplice, no han sido corroboradas a los efectos de conectar al acusado con el delito que se le imputa, y en que toda la prueba del fiscal tomada en conjunto resulta insuficiente para una condena.

Ya hemos dicho antes que la evidencia oral era admisible para probar la edad de la perjudicada. La declaración de Elisa Vélez fué corroborada por el Dr. Seín en cuanto a su reciente desfloración; por Adelís Hernández en cuanto a que el acusado Luis Millán fué el primero que tuvo contacto carnal con ella aquella noche, y con respecto a que ese testigo no fué corroborado, si era un cómplice, nos bastará decir que tal corroboración existió porque otro testigo, Domingo Quiles, declaró que oyó cuando Francisco Acevedo cerca de Millán y pudiendo éste oirlo se jactaba de lo que habían hecho aquella noche con Elisa; y por último la prueba en conjunto era suficiente para ser sometida al jurado y no ordenar un veredicto de absolución perentoria pues como hemos dicho relacionaba al acusado con el delito, siendo la declaración de Elisa Vélez clara y precisa y no vaga y débil como dice el apelante.

[7] En el quinto motivo de error se alega que es errónea la instrucción de la corte al decir al jurado lo siguiente: "En este caso concreto que se ha sometido a vuestra consideración ustedes tienen que ver si la declaración de Elisa Vélez

ha sido o no ha sido corroborada por la declaración de Ade-
lís Hernández, si la presencia de Adelís Hernández al ama-
necer del día en que se cometió el hecho en el barrio de Bar-
tolo es un indicio de corroboración de que él estaba allí pre-
sente, si es una corroboración de su declaración; si las ma-
nifestaciones de Domingo Quiles, el barbero, refiriéndose a
las otras manifestaciones del otro coacusado Francisco Ace-
vedo, de que la sangre aquella noche había estado al pecho,
había corrido, y la sonrisa de Millán en presencia de esas
manifestaciones, en vez de protestar del hecho y negarlo, si
eso es o nó es una corroboración; y, finalmente, si la decla-
ración del Dr. Seín es o nó una corroboración en cuanto al
acto de la desfloración. . . . . Aquí el fiscal ha traído prueba
de que no existe la prueba primaria con certificaciones nega-
tivas, primero del registro civil, después de la iglesia, y una
vez probado esto ha probado con declaraciones o ha tratado
de probar con la declaración de Rosa Marrero, con la decla-
ración de la señora esta, partera, Juana Rodríguez Ramos,
la partera, la edad de la joven Elisa Vélez. Ustedes apre-
ciarán si esta prueba ha sido suficiente para llevar a vues-
tro ánimo, más allá de toda duda razonable, que esta joven
era menor de 14 años. Si todos estos elementos están pro-
bados, entonces ustedes no tienen otro remedio que traer un
veredicto de culpabilidad contra el acusado.''

Esas instrucciones no son erróneas, ni dice el apelante
por qué lo son, sino que desde el momento en que el juez
afirma que hubo las manifestaciones de Domingo Quiles y la
sonrisa de Millán, dan por ciertas y probadas esas declara-
ciones e invaden la facultad del jurado; pero lo que hacía
la corte era referirse a las declaraciones oídas por el jurado
para decirle a éste que viera si había sido corroborada la
declaración de Elisa Vélez. Lo mismo podemos decir de la
segunda parte de las instrucciones copiadas en la que la corte
no da por cierto que esté probada la edad de la perjudicada
sino que dice al jurado que aprecie si la prueba a que se re-

fiere lleva a su ánimo, fuera de duda razonable, que la joven es menor de 14 años.

[8] El penúltimo motivo de error es por haber sido negadas ciertas instrucciones que presentó la defensa del acusado para ser sometidas al jurado.

De las ocho instrucciones solicitadas por el abogado del acusado la corte dió al jurado las cuatro primeras y negó las otras cuatro que dicen así:

"Quinto. Que de acuerdo con el art. 253 del Código de Enjuiciamiento Criminal, no procede la convicción por declaración de un cómplice, a no ser que ésta sea confirmada por alguna otra prueba que por sí misma y sin la ayuda del testimonio del cómplice tienda a demostrar la relación del acusado con la comisión del delito; no siendo suficiente la dicha corroboración si sólo prueba la perpetración del delito por las circunstancias del mismo. Sexto. Que el jurado es el único juez para determinar si un testigo es o nó un cómplice. Séptimo. Que en estos casos el testigo (cómplice) actúa bajo promesa de inmunidad y que si bien es cierto que esta promesa es siempre negada por el cómplice, su existencia se sospecha siempre. Octavo. Que la declaración de un cómplice en un proceso por violación no puede servir para corroborar la declaración de la ofendida, ni el testimonio de ésta puede ser suficiente para corroborar la declaración del cómplice."

Todas las instrucciones negadas descansan en la base de que Adelís Hernández es un cómplice de Luis Millán en el delito de que éste es acusado; en que el artículo 253 del Código de Enjuiciamiento Criminal dispone que no procede la convicción por la declaración de un cómplice a no ser que ésta sea confirmada por alguna otra prueba que por sí misma y sin la ayuda del testimonio del cómplice tienda a demostrar la relación del acusado con el delito, no siendo suficiente dicha corroboración si sólo prueba la perpetración del delito o las circunstancias del mismo. En este caso no se dieron instrucciones al jurado respecto a que debía considerar si Adelís Hernández es un cómplice y si en caso afirmativo su declaración estaba corroborada o nó y que fuera el jurado quien debiera decidir si es cómplice. ¿Era ese testigo un

cómplice del acusado para que se hiciera necesario dar al jurado las instrucciones que fueron solicitadas y negadas? Cómplice es la persona que está relacionada con otras en la comisión de un crimen y no encontramos en la evidencia el más pequeño vestigio de que hubiera concierto entre Luis Millán y Adelís Hernández para la comisión del delito imputado a Millán ni de ayuda alguna a él por parte de Hernández, pues lo que resulta es que los hombres que iban en el *truck* recogieron en el camino a Elisa Vélez y la subieron a él; que cuando el *truck* se detuvo en el barrio de Bartolo, tarde en la noche, se marchó Luis Acevedo y después Millán bajó a la niña del camión y se la llevó a un pasto donde la violó, llevándola otra vez al *truck* donde después de subirla se marchó; que allí quedaron Francisco Acevedo y Adelís Hernández hasta que amaneció habiendo tenido ambos contacto carnal con la niña, primero Acevedo y después Hernández, hechos que de ser ciertos demuestran tres delitos de violación independientes uno de otro y sin conexión entre sí, por lo que si bien cada uno de ellos podría ser acusado de un delito de violación, no podían ser acusados Acevedo y Hernández por el acto realizado por Millán, siendo esta distinción un medio para determinar si una persona es cómplice o nó de otra. 16 C. J. p. 671. Y como cuando los hechos con respecto a la participación de un testigo en el crimen imputado al acusado son claros e incuestionables es la corte la que debe determinar si dicho testigo es cómplice o nó (16 C. J. 677, párrafo 1370), y siendo claro en este caso que Adelís Hernández no era cómplice de Millán no cometió la corte inferior error al negar las mencionadas instrucciones relativas a complicidad.

*En vista de lo expuesto la sentencia apelada no es contraria a derecho y a las pruebas como se alega en el séptimo y último error por el apelante y debe ser confirmada, lo mismo que la resolución que negó el nuevo juicio.*

Los Jueces Asociados Señores Wolf y Hutchison, disintieron.