ANGEL TEODOSIO MERCADO, como padre con patria potestad sobre su hijo menor JUAN RICARDO MERCADO, demandante y apelado, *v.* THE AMERICAN RAILROAD COMPANY OF PORTO RICO, demandada y apelante.

Núm. 8492.—*Sometido:* Noviembre 10, 1942. *Resuelto:* Enero 15, 1943.

*Mariano Acosta Velarde,* abogado de la apelante; *Gustavo Cruzado Silva,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Los dieciocho errores que sirven de base a este recurso, con excepción de algunos de que nos ocuparemos más adelante, virtualmente se reducen a determinar si la corte sentenciadora incurrió en error manifiesto en la apreciación de la prueba. Los hechos, según resultan de la declaración del demandante apelado, pueden resumirse así:

Allá para el 23 de octubre de 1938, el demandante, que entonces era menor de catorce años, fué por orden de su

padre desde la parada 27, en Martin Peña, donde residía, hasta la Colonia San Patricio, cerca del paso a nivel frente al Campamento Buchanan, con el objeto de cobrar a Delfín Cosme $1.50 que éste le adeudaba. Para regresar a su residencia, el niño se dispuso a tomar el tren que pasa por aquel sitio entre cuatro y cinco de la tarde y con ese objeto se dirigió a la estación de San Patricio. Al llegar el tren y poner el demandante un pie en uno de los peldaños de la pequeña escalera que da acceso al coche, el tren súbitamente inició su marcha, dando una fuerte sacudida que lo lanzó de espaldas, recibiendo con tal motivo una herida en la región occipital, así como la amputación por las ruedas del tren del dedo grande y del segundo del pie izquierdo y la del pie derecho por su dorso, habiendo sido necesario más tarde amputarle la pierna derecha debido a la neurosis de los tejidos y de los huesos, que se desarrolló con motivo de la herida recibida en el pie.

La evidencia de la demandada apelante tiende a probar que el demandante se hallaba esa tarde con otros muchachos en la estación de Bayamón. Que probablemente antes de salir de dicha estación el demandante dió la vuelta al tren y por el lado izquierdo del mismo, o sea el contrario al contiguo a la estación, se colocó en alguna forma que desconoce la demandada, debajo del penúltimo coche del tren y agarrándose con una mano de uno de los tensores de dicho coche logró mantenerse en dicho sitio hasta que como a un kilómetro o kilómetro y medio después de la estación de San Patricio, unos muchachos que viajaban como pasajeros en el tren notaron la mano del demandante que salía de debajo del coche agarrada al tensor y lo comunicaron al conductor, quien ordenó parar el tren. Bajaron los empleados de la demandada y varios pasajeros y luego de buscar al muchacho debajo de los coches lo descubrieron sobre la vía, entre los dos raíles, a una distancia de treinta o cuarenta metros detrás del último coche, siendo entonces conducido a la

plataforma del coche y dejado después en la estación de Martin Peña, de donde lo condujo su padre al Hospital Municipal.

Resolviendo el conflicto de la evidencia, se expresó así el juez sentenciador.

"No vamos a analizar toda la prueba en detalle. Simplemente nos vamos a fijar en ciertos extremos de ella para tratar de demostrar la inverosimilitud de la teoría de la demandada. Ya hemos expuesto anteriormente las lesiones recibidas por el demandante: una herida de una pulgada en la región occipital y lesiones en los pies. El resto del cuerpo intacto. Estas lesiones, a nuestro juicio, demuestran claramente la certeza de la teoría del demandante; al dar el tirón el tren, éste lanzó al demandante, de espaldas, como él dice, fuera de la vía, recibiendo entonces, al caer sobre el terreno, la herida de la región occipital a que alude el médico en su testimonio; siendo entonces sus extremidades, los pies, la única parte de su cuerpo que fuera arrollada por el ferrocarril. Nótese que el tren solamente cogió el pie izquierdo por dos de sus dedos, el grande y el segundo. En el pie derecho, aunque la invasión fué más extensa, no pasó del dorso y aunque fué cierto que posteriormente hubo necesidad de amputar la pierna, ello se debió no a la lesión recibida directamente en la pierna, sino a la neurosis de los tejidos y los huesos como consecuencia de las heridas recibidas en el dorso del pie. Por el contrario, si el menor cae de la posición en que lo coloca la demandada en cualquiera de las fotografías por ella presentadas (exhibits M, O y P de la demandada) mientras está el tren en movimiento, cayendo en medio de la vía debajo del penúltimo vagón (teoría de la demandada) no hubieran sido las expuestas anteriormente las únicas lesiones recibidas; no tenemos la más mínima duda, después de haber examinado los anteriores exhibits que como muy bien dijo el guardafrenos y testigo de la demandada, Inés Serrano, si el menor demandante cae debajo del penúltimo coche las carretillas y traviesas de los vagones último y penúltimo lo hubieran desbaratado."

\*　　　\*　　　\*　　　\*　.　　　\*　　　\*　　　\*

"En síntesis, no tenemos razón alguna para dudar de la declaración del menor demandante; por el contrario ella nos mereció entero crédito. Siendo ello así la ley es clara en el sentido de que constituye negligencia por parte de un porteador público el mover un tren cuando un pasajero está en el acto de abordarlo. 13 C.J.S. 1367, §730."

Hemos estudiado la declaración del demandante en relación con las lesiones por él recibidas y no podemos convenir con la apelante en que la corte inferior haya incurrido en error manifiesto en la apreciación de la prueba, especialmente después de examinar las fotografías de los coches y de la vía, presentadas por ella a fin de ilustrar la forma en que ha podido suceder el accidente. Opinamos como el juez sentenciador que si el demandante hubiese ocupado la posición que ilustran las fotografías, es por lo menos casi imposible que el niño no fuese destrozado al pasar sobre él los dos últimos coches. Y se hace más patente la irrazonabilidad de la teoría de la demandada si tenemos en cuenta que las únicas heridas recibidas por el demandante fueron las de los pies y la de la región occipital, lesiones que por su localización armonizan perfectamente con la declaración del demandante.

Arguye la apelante que la corte inferior al apreciar la prueba sólo tuvo en consideración una parte de la misma y basa su aserto en que al discutir la teoría de una y otra parte la corte empezó diciendo:

"No vamos a analizar toda la prueba en detalle. Sin embargo, nos vamos a fijar en ciertos extremos de ella para tratar de demostrar la inverosimilitud de la teoría de la demandada."

No está bien fundada la conclusión de la apelante. Lo que fácilmente se infiere de las frases transcritas y estuvo sin duda en la mente del juez, fué que a los efectos de demostrar la inverosimilitud de la teoría de la demandada, sólo bastaba fijarse en ciertos extremos que inmediatamente pasó a discutir.

Como los testigos de la demandada que declararon en relación con el accidente son numerosos y el juez, según hemos visto, basó su fallo en la declaración del demandante, sostiene la apelante que la preponderancia de la prueba está en favor de ella e invoca el caso de *Rosado* v. *Ponce Ry. & Light Co.*, 20 D.P.R. 564, 572, donde se citan con aprobación las siguientes palabras de la Corte Suprema de Tennessee:

"El término preponderancia de evidencia no significa la mera superioridad númerica de testigos, sino el peso, crédito y valor de la totalidad de la evidencia aportada por cada una de las partes. Si, sin embargo, los testigos son de igual honradez, candor, inteligencia y verdad, y están igualmente corroborados en los otros extremos de sus declaraciones e igualmente libres de interés en el pleito, entonces el mayor número determina la preponderancia." *Willcox* v. *Hines*, 100 Tenn. 524, 66 Am. St. Rep. 761.

De la cita que precede claramente resulta que el mayor número de testigos no es el único factor para determinar de qué lado está la preponderancia de la evidencia. Para que esa circunstancia sea decisiva, precisa que los testigos de una y otra parte estén "igualmente corroborados en los otros extremos de sus declaraciones" y ya hemos visto que las circunstancias concurrentes, es decir, el sitio donde según la demandada fué encontrado el demandante al ser recogido por sus empleados así como la localización de las heridas recibidas, corroboran fuertemente la teoría del demandante y tienden a destruir la de la demandada. Siendo ello así, es de aplicación el artículo 524 del Código de Enjuiciamiento Civil que en lo pertinente prescribe:

"Artículo 524. El efecto de la evidencia no es arbitrario, sino que se ejercerá con discreción jurídica, y sujeción a las reglas de evidencia.

"El tribunal o jurado no está obligado a decidir de conformidad con las declaraciones de cualquier número de testigos, que no llevaren a su ánimo la convicción, contra un número menor o una presunción u otra evidencia que le convenciere.

" *      *      *      *      *      *      * "

■■ Está en lo cierto la apelante al sostener que la corte *a quo* erró al admitir con su oposición una certificación en relación del acta de nacimiento del demandante con el fin de probar que éste es hijo legítimo de Angel Teodosio Mercado, quien compareció en este pleito como su padre con patria potestad. *Pueblo* v. *Márquez,* 43 D.P.R. 46. Pero la aludida certificación no fué la única evidencia que se presentó en este caso para probar la relación de Angel Teodosio

Mercado con el indicado menor, ya que también fué admitida, aunque con la oposición de la demandada, la declaración del referido Angel Teodosio Mercado al efecto de que el menor demandante era su hijo, apareciendo también de los autos que al ocurrir el accidente dicho menor vivía en compañía de su alegado padre y que recibió las lesiones mientras llevaba a cabo ciertas gestiones que éste le encomendara. Prescribe, sin embargo, el artículo 250 del Código Civil que las actas del Registro Civil constituirán la prueba del estado civil, prueba que sólo podrá ser suplida por otras en el caso de que no haya existido el acta o hubiesen desaparecido los libros del Registro, o cuando ante los tribunales se suscite contienda. Véase 4 Wigmore *on Evidence* (3a. ed., 1940), sección 1336, donde se hace un admirable estudio de nuestro estatuto y de la jurisprudencia de este tribunal interpretativa del mismo.

Es verdad que la Ley del Registro Demográfico de Puerto Rico, aprobada el 22 de abril de 1931, pág. 229, en su sección 38 prescribe que la copia del récord de cualquier nacimiento, matrimonio o defunción, después que sea certificada por el Comisionado de Sanidad o por la persona autorizada por él, constituirá evidencia prima facie ante todas las cortes de justicia de los hechos que constan en la misma, omitiéndose en dicha ley la disposición al efecto de que las copias certificadas de dichas actas constituyen la mejor evidencia de su contenido, como hemos visto prescribe el artículo 250 del Código Civil. Pero como dicha ley se aplica exclusivamente a los nacimientos, matrimonios y defunciones inscritos a partir de su vigencia, claro está que esta disposición no afecta las inscripciones que como la de nacimiento del menor demandante existían en el Registro Civil con anterioridad a la fecha en que empezó a regir la citada ley de 1931. Ello no obstante, opinamos que en el presente caso, por las razones que vamos a exponer, era admisible la evidencia oral para probar el punto en cuestión. Si la acción en este caso hubiera sido establecida por Angel Teodosio Mercado en su propio beneficio como padre del

menor o si la causa de acción establecida a favor de éste último derivase su existencia de sus derechos como hijo de Angel Teodosio Mercado, no vacilaríamos en sostener que habría constituído error perjudicial la admisión de la prueba oral, existiendo como existe la mejor prueba, cual es el acta del Registro Civil. Pero en el presente caso la cuestión de la paternidad es extraña por completo a la causa de acción en favor del menor y en manera alguna puede afectar su existencia. La misión de Ángel Teodosio Mercado está aquí limitada a cumplir el deber que al padre, y en su defecto a la madre, impone la ley, de representar a sus hijos no emancipados en el ejercicio de todas las acciones que como la de este caso puedan redundar en su provecho. En tales circunstancias, el parentesco entre el menor y su alegado padre, es por decirlo así, una cuestión colateral que no requiere la estricta aplicación del artículo 250 del Código Civil. En el caso de *Pueblo* v. *Ruiz*, 31 D.P.R. 312, 314, se sostuvo por este tribunal que el citado precepto del Código Civil se refiere a la prueba del estado civil y que la edad de un individuo no es estrictamente parte del estado civil, por lo que se admitió evidencia oral para probar que el acusado en un caso de acometimiento y agresión con circunstancias agravantes era mayor de veintiún años. En el de *Pueblo* v. *Ibern,* 31 D.P.R. 917, 925, se decidió que la viuda que estuvo con su esposo hasta el momento de la muerte es un testigo competente para establecer el fallecimiento. Y finalmente, en el de *Pueblo* v. *Millán,* 35 D.P.R. 889, se admitió prueba oral para demostrar que la edad de la víctima era menor de catorce años, a pesar de que se trataba de un caso de violación, en que dicha prueba era un elemento esencial del delito. No vemos por qué en el presente caso no deba admitirse la prueba oral, sobre todo cuando se trata de la declaración del padre, quien por lo general es la persona que suministra los datos necesarios para extender el acta.

Además, los intereses de la demandada en nada se perjudican, pues al satisfacer ésta su sentencia, su importe

se deposita en la corte inferior para ser invertido en la forma que mejor convenga a los intereses del menor, quien desde luego, habiendo recibido el provecho de la compensación, estaría impedido de incoar una nueva acción por la misma causa.   Pero en el supuesto de ser errónea la admisión de la prueba oral, el error no ha lesionado los intereses sustanciales de la apelante y siendo ello así no produce la revocación de la sentencia.   Artículo 142 del Código de Enjuiciamiento Civil.

■ Al fijar el montante de los daños e imponer las costas y honorarios de abogado la corte sentenciadora se expresó así:

"... . Sólo nos resta fijar la cuantía de la indemnización.   El demandante, un niño de 14 años de edad cuando ocurrió el accidente, estuvo recluído en el hospital desde octubre 23 hasta diciembre 15 de 1938.   Sufrió la amputación del dedo grande y la fractura del dedo segundo.   Le fué también amputada la pierna derecha ɔ ɿ el tercio medio.   En *Delgado* v. *Díaz,* 30 D.P.R. 120, donde el niño sufrió daño en una pierna, declarando los peritos que quedaría más o menos incapacitado para poder dedicarse a un trabajo estable, pero donde no hubo amputación, se concedieron $3,000.   En el presente vamos a conceder $5,000.   Se condena también en costas y honorarios de abogado; la cuantía de estos últimos, tomando en cuenta la indemnización concedida y que el juicio duró varios días, la vamos a fijar en $500."

A nuestro juicio, no hizo mal uso de su discreción la corte sentenciadora al estimar los daños sufridos por el demandante en la cantidad de $5,000, habida consideración de la edad del demandante y de la gravedad y carácter permanente de las lesiones sufridas.

■ Por último, sostiene la demandada que debemos revocar el pronunciamiento de honorarios de abogado toda vez que habiendo reclamado el demandante una indemnización de $25,000 y siéndole concedida solamente por la cantidad de $5,000, tal circunstancia es demostrativa de que no hubo temeridad por su parte al oponerse a las pretensiones exageradas del demandante.   Ya hemos resuelto que esa sola circuns-

tancia no implica la inexistencia de temeridad. *Reyes* v. *Aponte,* 60 D.P.R. 890, 900, y *Font* v. *Viking Construction Corp.,* 58 D.P.R. 689, 712. Esto es así porque la demandada, al defenderse en este caso, no lo hace porque a su juicio la reclamación sea exagerada, sino porque rechaza toda responsabilidad, grande o pequeña, por los daños sufridos por el apelado. Si la demandada en efecto cree que la cantidad reclamada es exagerada y es ésa la única razón que tiene para oponerse a las pretensiones del demandante, es su deber admitir francamente su responsabilidad y limitar la controversia a la fijación de la cuantía a ser concedida. Parece innecesario aclarar que cuando las circunstancias del caso razonablemente justifiquen al demandado a creer que las pretensiones del demandante carecen de fundamento, no está él obligado a admitir una responsabilidad que de buena fe no cree tener. Consideradas todas las circunstancias concurrentes y entre ellas lo laborioso que resultó el juicio, que se prolongó por varios días, y en el que fueron examinados unos diecinueve testigos presentados por la demandada y cuatro o cinco por el demandante, no creemos que el juez sentenciador hiciera mal uso de su discreción al fijar dichos honorarios en la cantidad de $500.

*Por las razones expuestas, procede desestimar el recurso y confirmar la sentencia apelada.*

El Juez Asociado Señor Snyder no intervino.