Ruperto López, demandante y apelado, *v.* Félix Bravo López y Gloria Bravo Rodríguez, demandados y apelantes.

Núm. 9512.—*Sometido:* Enero 14, 1948. *Resuelto:* Marzo 29, 1948.

---

*García Méndez & García Méndez,* abogados de los apelantes; *Héctor Reichard,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Apelan los demandados Félix Bravo López y Gloria Bravo Rodríguez de la sentencia dictada por la Corte de Distrito de Aguadilla con fecha 12 de agosto de 1946, declarando al demandante Ruperto López hijo natural reconocido de Juan Ramón Bravo, conocido por Nene Bravo, con todos los derechos inherentes a tal condición.

En apoyo de su recurso señalan tres errores, siendo el primero de ellos que la corte inferior erró "al resolver que cabía admitir evidencia testifical para probar el nacimiento del niño, sin antes haberse acudido a la prueba primaria del registro, de acuerdo con la Ley de Evidencia." No ha habido tal error.

La edad de una persona no forma parte de su estado civil. *Mercado* v. *American Railroad Co.,* 61 D.P.R. 228, 235. Empero, como la filiación ha de ser determinada

de acuerdo con la ley vigente a la fecha del nacimiento, el establecer la edad de aquél que alega ser hijo natural de otro es por lo menos importante a ese efecto. *Mercado* v. *Sucn. Mangual,* 35 D.P.R. 422; *Méndez* v. *Martínez,* 21 D.P.R. 252. En casos de esta naturaleza, la declaración de la madre respecto a la edad de su hijo no constituye prueba secundaria. *Pueblo* v. *Valladares,* 51 D.P.R. 654; *Pueblo* v. *Rodríguez,* 47 D.P.R. 89. *Cf. Pueblo* v. *Millán,* 35 D.P.R. 889.

Por otro lado, cuando una parte se opone a que los testigos de la otra declaren sobre la edad de la persona cuya filiación está en disputa y más tarde esa misma parte contrainterroga a los testigos del demandante o interroga a los propios al efecto indicado, ella renuncia a la objeción suscitada sobre la edad o fecha de nacimiento de aquél. *Assise* v. *Curet,* 22 D.P.R. 555; *cf. Pueblo* v. *De Jesús,* 18 D.P.R. 591. En el presente caso es incuestionable que los demandados se opusieron a que la madre del demandante y algunos de los testigos de éste declararan respecto a la edad que Ruperto López tenía para la época en que se vió el juicio o sobre la fecha de su nacimiento. No obstante, los mismos demandados reiteradamente contrainterrogaron a los testigos del demandante sobre la edad de éste e interrogaron igualmente al mismo efecto a su testigo Jenaro Soto. Veamos: Mientras contrainterrogaban al testigo del demandante Venancio Torres, le preguntaron: ''¿Cuántos años tiene Ruperto?'', y el testigo contestó: ''Cuarenta años''. (Tr. Ev., pág. 40.) Al testigo Rafael Feliciano preguntaron los demandados: ''¿En qué año quedó doña Rosario López embarazada de Ruperto López?'' (pág. 71). Más tarde preguntaron a Francisco Cordero, testigo del demandante: ''¿En qué año nació Ruperto?'', contestando éste: ''Ruperto nació en el 1906''. (Pág. 87.) Al propio demandante, al ser contrainterrogado, preguntaron los demandados: ''¿Qué edad dice usted que tiene?'', y éste con-

testó: "Yo nací en el 1906, el 16 de marzo." Insisten entonces los demandados y preguntan al demandante: "¿Usted tiene qué edad?", y él le replica: "Cuarenta años." (Pág. 104.) Finalmente, a su propio testigo Jenaro Soto los demandados hicieron la siguiente pregunta: "¿Desde que él nació hasta el día de hoy que van cuarenta años, alguna vez supo usted que tuviera relaciones de padre e hijo el Nene Bravo con Ruperto López?", a lo cual contestó el testigo Soto, "Nunca." (Págs. 132–133.)

· No sólo por ser admisible en evidencia que en pleitos de esta naturaleza una persona con conocimiento exacto del hecho del nacimiento declare sobre la edad de la persona cuya filiación se solicita, si que también debido al hecho de que los demandados, según hemos indicado, renunciaron a la cuestión de derecho por ellos planteada, llegamos a la conclusión dé que el primer error imputado no se ha cometido.

Pasemos ahora al segundo: Éste es al efecto de que "cometió error la Corte de Distrito de Aguadilla al declarar con lugar una demanda de filiación de un supuesto hijo nacido entre una mezcla de hijos ilegítimos de diversos hombres, sin determinarse la fecha de su nacimiento en forma alguna convincente." Ya hemos dicho más arriba que para determinar la filiación de una persona es imperativo acudir a la ley vigente a la época de su nacimiento. Como de acuerdo con los autos el demandante nació el 16 de marzo de 1906, la ley que rige el asunto ante nos lo es el artículo 189 del Código Civil, tal cual figura en los Estatutos Revisados de 1902. Preceptúa éste que:

"Artículo 189.—El padre está obligado a reconocer al hijo ilegítimo en los casos siguientes:

"1.—Cuando exista escrito suyo indubitado en que expresamente reconozca su paternidad.

"2.—Cuando pública o privadamente le tenga por hijo suyo o lo haya llamado tal en conversación o se ocupe de su educación y sostenimiento.

"3.—Cuando la madre fué conocida viviendo en concubinato con el padre al tiempo del embarazo o nacimiento del hijo o cuando éste haya nacido llevando sus padres relaciones amorosas."

Las alegaciones esenciales de la demanda son que el demandante es mayor de edad; que en 8 de junio de 1945 los demandados fueron declarados hijos naturales reconocidos de Juan Ramón Bravo, quien falleció el 5 de abril de 1945; que dicho finado sostuvo relaciones amorosas íntimas con la madre del demandante allá para el año 1905 y subsiguientemente y que como resultado de esas relaciones nació en 16 de marzo de 1906 el demandante Ruperto López, quien gozó de la posesión continua del estado de hijo natural reconocido de su padre Juan Ramón Bravo, ocupándose éste de su sostenimiento y alimentación, dándole pública y privadamente el trato familiar y ostensible de hijo reconocido, ocupándose de su educación y salud, teniéndole en su propio hogar y tratando sus herederos, los aquí demandados, al demandante, tanto antes como después de la muerte de Juan Ramón Bravo, como hijo natural reconocido de éste.

Negaron en su contestación los demandados los hechos esenciales de la demanda y solicitaron que ésta fuera declarada sin lugar.

Toda vez que el segundo error señalado se dirige específicamente a la apreciación que de la prueba hizo la corte inferior, inmediatamente haremos una breve exposición de lo declarado por cada uno de los testigos.

*Rosario López* es la madre del demandante. Sostuvo relaciones con Juan Ramón Bravo, conocido por Nené Bravo, y como resultado de ellas nació el demandante. Vivió con Juan Ramón Bravo de cuatro a cinco años y cuando Ruperto crecía, Bravo le ayudaba siempre, se ocupaba de los gastos de enfermedad de éste, le atendía, lo llevaba a bautizos y a fiestas, pagaba por su alimentación, lo llevaba a su casa y todos los parientes de él lo trataban como si fuera familia

de ellos; y cuando Ruperto iba a casa de Bravo éste lo invitaba a subir y le echaba la bendición.

*Venancio Torres,* de 75 años y vecino que fué del mismo barrio donde vivía la madre del demandante, conocía a ésta y conoció también a Juan Ramón Bravo, constándole que éstos llevaban relaciones entre sí y sabiendo que ella era la querida de él. Rosario le compró al testigo una choza donde ella dió a luz a Ruperto, poco después de lo cual Juan Ramón Bravo pasó por allí y le dijo a él que les tuviera cuidado, refiriéndose a doña Rosario y al niño; que vió que Bravo visitaba a Ruperto y lo trataba como un hijo y que mientras Ruperto crecía Bravo se ocupaba de éste y lo alimentaba.

*Rafael Feliciano,* quien alegó ser hermano natural, aunque no reconocido de Juan Ramón Bravo, declaró en forma muy similar a como lo había hecho Venancio Torres, asegurando además que el propio Juan Ramón Bravo le dijo que Ruperto era hijo suyo.

*Francisco Cordero* conocía a Ruperto López desde hacía unos 38 años y dijo ser compadre de Juan Ramón Bravo, teniendo amistad íntima con éste. Conoció a Rosario López llevando amistad con Bravo y recuerda que varias veces Bravo llevó a Ruperto a la casa del testigo. Bravo siempre lo trataba como hijo, le echaba la bendición y lo presentaba como tal.

*Ruperto López,* el demandante, manifiesta que conoció a Juan Ramón Bravo, como padre suyo que fué; que Bravo siempre lo ayudaba y lo llevaba a almorzar a su casa, quedándose él con éste dos o tres días. Siempre Bravo lo tuvo como un verdadero hijo de él.

*Luis Soriano, Jenaro Soto, Félix Bravo, Juan S. Bravo* y *Justo Méndez Cabrera,* declararon por los demandados y su testimonio tuvo el propósito de desvirtuar cuanto habían dicho los testigos del demandante. Según ellos, Juan Ramón Bravo y Rosario nunca habían tenido relaciones ínti-

mas; Bravo nunca había tenido ni pública ni privadamente a Ruperto López por hijo suyo y a los únicos que en todas ocasiones había considerado como tales había sido a Félix y a Gloria, los aquí demandados, manifestándolo así por última vez poco antes de su muerte.

Es indiscutible que Rosario López, madre del demandante, posiblemente por su avanzada edad—de los autos surge que para la época en que declaraba tenía de 85 a 90 años—y tal vez debido a ser una mujer analfabeto que había pasado toda su vida en el campo, incurrió en omisiones al manifestar de primera intención que solamente había tenido tres hijos, o sea, a Ruperto, Isabel y Águeda, y que luego al ser contrainterrogada se rectificó a este respecto. Pero en todo momento declaró sin vacilación haber vivido con Juan Ramón Bravo de cuatro a cinco años, allá para los años 1905 y siguientes, y haber tenido de éste a Ruperto, Isabel y Águeda, habiendo muerto las dos últimas. Es igualmente cierto que admitió haber tenido hijos de Francisco Bravo con anterioridad a la época en que vivió con Juan Ramón Bravo, sobrino de aquél; que asimismo admitió haber vivido con Fabián Rodríguez y haber tenido varios hijos de éste con posterioridad a la fecha en que cesaron sus relaciones con Juan Ramón Bravo; que aceptó también haber tenido relaciones con Santiago Muñoz y no haber tenido hijos de éste; y que años más tarde reanudó sus relaciones ilícitas con Francisco Bravo. Mas todo ello no desvirtúa sus manifestaciones relativas a haber sostenido relaciones íntimas con Juan Ramón Bravo durante cuatro o cinco años, ni el haber nacido el demandante Ruperto López como fruto de esas relaciones.

Innegable también es el hecho de que Venancio Torres, Rafael Feliciano y Francisco Cordero repetidamente dijejeron no poder recordar cuando se les preguntó sobre los demás maridos que Rosario López había tenido ni respecto a los otros hijos de ésta. Pero en su testimonio sobre las

relaciones de ella con Juan Ramón Bravo, sobre el nacimiento de Ruperto como resultado de esas relaciones y sobre la conducta de Juan Ramón Bravo hacia el demandante, apenas hubo vacilaciones.

Sea ello como fuere, la corte inferior era la llamada a aquilatar la evidencia aportada por las partes y a dirimir el conflicto que surgió. Así lo hizo, y la minuciosa lectura que de la transcripción hemos hecho nos lleva al convencimiento de que estuvo acertada en su apreciación. No sólo las alegaciones esenciales de la demanda quedaron probadas, sino también la filiación de Ruperto López como hijo natural de Juan Ramón Bravo bajo la ley vigente a la época del nacimiento de aquél. Véanse *Bernier* v. *Sucn. Honoré,* 39 D.P.R. 192 y *Román* v. *Sucn. Domich,* 38 D.P.R. 406.

El tercer y último error señalado es al efecto de que la sentencia dictada es fatalmente contraria a toda la evidencia presentada; de que la corte inferior la dictó a base de una supuesta "apretada síntesis" de las supuestas partes más importantes de los testimonios de los testigos; y de que en la consideración de la prueba ha habido apasionamiento, parcialidad y prejuicio y evidentemente se ha cometido el más absurdo y manifiesto error. Discrepamos. El detenido examen que hemos hecho de la prueba aducida por las partes nos lleva al convencimiento, repetimos, de que la corte inferior actuó acertadamente al aquilatar la misma en su totalidad. No hallamos indicios de apasionamiento, de prejuicio o de parcialidad, ni error manifiesto en la apreciación de la evidencia. *Mercado* v. *Sucn. Mangual,* supra; *Latorre* v. *Cruz,* 67 D.P.R. 743, 752.

*Bajo estas circunstancias, se impone la confirmación de la sentencia apelada.*