Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| EDGAR RIOS, LILLIAM REYES Y LA SOCIEDAD LEGAL DE GANANCIALES POR ELLOS COMPUESTA **Recurridos** <br><br> v. <br><br> SAN GERONIMO CARIBE PROJECT, INC. **CPG ISLAND PROPERTIES VI, LLC** UNITED SURETY & INDEMNITY CO. BIRD CONSTRUCTION CO., INC. **CPG/GS PR NPL, LLC** <br><br> **Recurrentes** | KLRA202400330 <br><br><br><br> CONSOLIDADO CON: | Revisión Judicial Procedente del Departamento de Asuntos del Consumidor <br><br> Caso Núm.: SJ0013933 <br><br> Sobre: Ley Núm. 130 de junio de 1967, según enmendada |
| EDGAR RIOS, LILLIAM REYES Y LA SOCIEDAD LEGAL DE GANANCIALES POR ELLOS COMPUESTA **Recurridos** <br><br> v. <br><br> SAN GERONIMO CARIBE PROJECT, INC. CPG ISLAND PROPERTIES VI, LLC UNITED SURETY & INDEMNITY CO. **BIRD CONSTRUCTION CO., INC.** CPG/GS PR NPL, LLC <br><br> **Recurrentes** | KLRA202400331 | Revisión Judicial Procedente del Departamento de Asuntos del Consumidor <br><br> Caso Núm.: SJ0013933 <br><br> Sobre: Ley Núm. 130 de junio de 1967, según enmendada |

Panel integrado por su presidenta la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de octubre de 2024.

Comparecen ante nos, CPG Island Properties VI, LLC y Bird Construction Co. Inc., en adelante y respectivamente, CPG y Bird o

recurrentes, solicitando que revisemos la *"Resolución"* emitida el 7 de febrero de 2024 por la Oficina de Asuntos del Consumidor, en adelante, DACo o la agencia. Estos presentaron por separado sus respectivos recursos de *"Revisión Judicial"* que, por tratarse de los mismos hechos y la misma *"Resolución", hemos consolidado en un solo recurso.*

En la resolución recurrida, DACo ordenó a CPG, Bird y San Gerónimo Caribe Project (en adelante SGCP) a corregir satisfactoria y solidariamente los defectos de la propiedad, más $20,000.00 en honorarios de abogado solidariamente y, por otro lado, una suma adicional de $15,200.00 contra CPG por temeridad al negar responsabilidad.

Por los fundamentos que expondremos a continuación, *modificamos la determinación recurrida y,* modificado, *devolvemos.*

## I.

SGCP es la desarrolladora del complejo de edificios Paseo Caribe, que incluye el Condominio Laguna Plaza, Bahía Plaza y Caribe Plaza. Para lograr la construcción y desarrollo del proyecto, SGCP contrató con distintas empresas entre las que se encuentran Bird, CPG, Beame Architectural Partnership, Marva Industrias Metálicas, entre otras. Bird fue delegado como el Contratista General de Laguna Plaza.[1] Bird finalizó e hizo entrega del Proyecto en mayo de 2009 a SGCP. Por otro lado, CPG ejerció funciones como urbanizador o desarrollador, siendo el principal responsable de la promoción, venta y administración del proyecto.[2]

El 27 de junio de 2013 los esposos Edgar Ríos, Lilliam Reyes y la Sociedad de Bienes Gananciales compuesta por ambos, en adelante los recurridos, acordaron con CPG la compraventa de un

---

[1] Apéndice Bird, págs. 202-329.
[2] Apéndice Bird, págs. 9; Apéndice CPG, págs. 1-33, Alegato en Oposición, pág. 47.

inmueble en el complejo de edificios Paseo Caribe. Como parte de ese acuerdo los recurridos podrían inspeccionar el apartamento PH-1002 antes del cierre de la compraventa. Dos días después, el *29 de junio de 2013*, los recurridos inspeccionaron el apartamento y durante el proceso realizaron una lista de deficiencias en la que enumeraron los desperfectos que debían corregirse y procedieron a firmar el cierre. En el listado sobre las deficiencias se establecían los siguientes reclamos:[3]

- Entrada: (1) corregir albañilería paredes; (2) corregir grieta *gypsum* contra plafón; (3) corregir golpes en puerta madera; (4) reemplazo goznes oxidados.
- General: (1) instalar tapas ciegas en plafones *gypsum board*; (2) cristalizar pisos interiores; (3) piso balcón - debastar **[sic]** piso y sellado.
- Balcón: (1) pintar paredes; (2) pide que se trabaje marco puerta *sliding* entre apartamento interior y piso balcón.
- General: (1) pintura paredes general; (2) reemplazo goznes oxidados; (3) door stop - reemplazo e instalarlo abajo.
- *Master Bedroom*: (1) corregir mancha humedad pared encima de rejilla A/C.
- Bath Master: (1) corregir presión ducha y bañera; (2) inodoros limpieza (general); (3) aplicar caulking entre *backsplash* y tope *vanity*.
- *Laundry Room*: (1) limpieza piso; (2) limpieza pileta y mezcladora; (3) limpieza puerta hacia área de servicio.
- Habitación núm. 1: (1) corregir receptáculos no funcionan.
- Sala / Comedor: (1) reemplazo losa rota.
- General: (1) limpieza puertas todas; (2) ventanas corregir pintura con oxido.
- Cocina: (1) aplicar *caulking* contra mueble gabinetes; (2) corregir *ground fault* no tiene corriente.
- *Family Room*: (1) trabajar paredes en general - albañilería.
- General: (1) corregir *caulking* contra marco ventanas.
- Cocina: (1) *backsplash* corregir hueco al lado del receptáculo *ground fault*; (2) descubrir aguas para *dishwasher*, (3) color diferente del mueble lado hacia ventana; (4) corregir lado mueble parte de abajo lamina despegada.
- Balcón: (1) limpieza marco metal por fuera; (2) pintura plafón.

---

[3] Apéndice CPG, págs. 34-35; Apéndice Bird, págs. 13-14.

El 27 de noviembre del 2013, a cinco (5) meses del cierre, los recurridos hacen envío de *una primera carta* a CPG en la que reafirman la necesidad de acción al listado de deficiencias.[4] Fechada el 26 de diciembre de ese mismo año, los recurridos enviaron una *segunda carta* haciendo referencia a la primera carta y el listado de deficiencias nuevamente.[5] El 15 de mayo de 2014, los recurridos enviaron nuevamente *otra carta.* En esta, recalcaron lo solicitado en las cartas anteriores y añadieron que existía problemas con el polvo fugitivo y losas rotas despegadas del piso.[6]

Finalmente, el *21 de noviembre de 2014* presentaron querella, inicialmente, contra CPG y SGCP ante DACo por vicios de construcción.[7] Esta fue contestada por SGCP el 12 de enero de 2015, solicitando la desestimación de la querella y argumentando que hizo todo lo posible por evitar los daños y los querellantes se lo impidieron.[8] Tras varios escritos, mociones y procesos administrativos, *el 28 de julio de 2015*, DACo emitió una *Orden* titulada *Resolución Interlocutoria*, en la que declaraba *Ha Lugar* las mociones solicitando *Prórroga para el Descubrimiento de Prueba* solicitados por CPG y SGCP, pero también *motu proprio*, DACo ordenó *la inclusión de Bird en el pleito administrativo*.[9]

Como parte del trámite procesal, en este caso se llevaron a cabo un total de veintidós (22) vistas para el desfile de prueba entre el año 2018 y el 2019.[10] Comenzando el 10 de octubre de 2018, continuando durante los días 19, 29 y 31 de octubre de 2018; 26 de noviembre de 2018;18, 23, 24 y 30 de enero de 2019; 1 y 11 de febrero de 2019; 21, 27 y 28 de marzo de 2019; 13 y 15 de mayo de

---

[4] Apéndice CPG, págs. 36-37.
[5] *Íd.* págs. 38-40.
[6] *Id.* págs. 42-43.
[7] Apéndice CPG*,* págs. 44-49; Apéndice Bird págs. 85-90.
[8] Apéndice Bird, págs. 93-97.
[9] *Íd.* págs. 105-110.
[10] *Íd.* pág. 1.

2019; 11, 16 y 18 de julio de 2019 y los días 9, 10 y 11 de septiembre de 2019.[11]

El 7 de febrero de 2024 DACo emitió Resolución en la que se declaró *Ha Lugar* la querella contra los co-querellados CPG/GS VI, SGCP y Bird ordenándoles a corregir satisfactoria y solidariamente los siguientes defectos: (1) Reemplazo de goznes oxidados (Entrada); (2) Marco puerta *sliding* entre interior y piso del balcón; (3) Reemplazo goznes oxidados (General) y; (4) Ventanas corregir pintura con óxido (General). También ordenó (1) a CPG a pagar la suma de $15,200.00 por concepto de honorarios de abogado al insistir en no tener responsabilidad y (2) a CPG, SGCP y BIRD a pagar, solidariamente, la suma de $20,000.00 por concepto de honorarios de abogado.[12]

En las determinaciones de hechos, DACo eliminó la mayoría de las alegaciones, estableciendo como vicios de construcción solo las enumeradas en la orden y, principalmente, adjudicando responsabilidad a las recurridas por las determinaciones 68, 103 y 104, que leen de la siguiente forma:[13]

> [. . .]
> 68. Con fecha de 30 de julio de 2013 la querellante Lillian Reyes suscribió el *Final Buyer Acceptance* que consta en la parte inferior del *Punch List Form* de 29 de junio de 2013. Además, consta en la segunda página la siguiente anotación: "Se le trabajó con relocalización de toma eléctrica en área *Family Room* según solicitada".
>
> (. . .)
>
> 103. Previo a su reemplazo total y para las fechas en que fue inspeccionado por los peritos, el piso del apartamento tenía pedazos pequeños o "spots" con textura opaca, unas presentaban eflorescencia y algunas losas tenían grietas con salidas de pequeñas porciones. Además, antes de salir al balcón, a la mano izquierda del *sliding door,* se encontraron no más de

---

[11] Apéndice Bird, pág. 1.
[12] Apéndice CPG, págs. 59-105; Apéndice Bird, págs. 1-47.
[13] Apéndice CPG, págs. 74, 79 y 86; Apéndice Bird, págs. 16, 21 y 28.

cinco (5) losas rotas ("chipeadas"). Estos defectos eran corregibles y no fue establecido el ancho de las grietas mencionadas en los informes, tampoco la cantidad exacta de losas afectadas con textura opaca y eflorescencia.

104. Salvo las cinco (5) losas "chipeadas" ya mencionadas, los vicios que presentaban las losas de mármol en el apartamento, incluyendo aquellas dañadas por la infiltración de agua a través de las ventanas, eran defectos que pudieron haberse corregido con personal diestro y con un buen pulimiento.

En cuanto a CPG también se determinó que incurrió en una práctica indeseable en el negocio de la construcción de vivienda al haber coordinado las inspecciones del apartamento, administrado, promovido y mercadeado el proyecto Laguna Plaza, como empresario o principal responsable del mismo, sin poseer una licencia otorgada por el Secretario.[14] Cuando, por voz de la señora Yamira Pagán y del señor Brian Aranson, incurrieron en una práctica engañosa al ocultar la verdadera relación o rol de SGCP y el señor Arturo Madero en Laguna Plaza, con el fin de persuadir a los querellantes a comprar el apartamento; y por esperar hasta casi al concluir la Vista Administrativa, para someter los documentos para demostrar que el dueño del Proyecto era SGCP y no CPG, habiendo sido solicitada mucho antes del comienzo de esta. Según reza la *Resolución:* "[e]llo abonó a su temeridad, dado que esperó en el último momento para someter esa documentación, aun cuando la prueba desfilada durante toda la vista claramente estableció que fue el principal responsable de la promoción, venta y administración de ese proyecto, independientemente de ser el dueño registral".[15]

Por su parte, el 27 de febrero de 2024, Bird presentó *Reconsideración* ante el DACo. En esta arguyó que *nunca le fue comunicado ningún vicio de construcción* y, que de los vicios y las

---

[14] Apéndice CPG, pág. 86; Apéndice Bird, pág. 28.
[15] *Id.*

prácticas indeseables que se sostuvieron no se probó ninguna responsabilidad de Bird. Por lo tanto, solicitaba la desestimación en cuanto a Bird porque no procedía la imposición de honorarios por temeridad ni la imputación de responsabilidad *in solidum*.[16] SGCP también presentó escrito mediante el cual solicitó *Reconsideración Parcial* el 28 de febrero de 2024. En resumen, argumentó que no procedía la imposición de temeridad por no realizar las correcciones a los defectos de construcción por obstaculizaciones de los querellantes, por lo tanto, sin negar responsabilidad sobre los vicios, solicitaba la eliminación de la imposición de honorarios por temeridad.[17]

El 24 de mayo de 2024 DACo emitió *Resolución en Reconsideración* en la que modificó parcialmente la Resolución del 17 de febrero de 2024, eliminando otra de las reclamaciones de los querellantes, sobre las ventanas y ventanales, pero manteniendo la responsabilidad solidaria en las reclamaciones que sobrevivieron.[18]

Inconformes CPG y Bird, recurrieron en alzada al Tribunal de Apelaciones mediante sus respectivos Recursos de Revisión Judicial en el que solicitan la revocación de la Resolución del 7 de febrero de 2024 emitida por DACo mediante los siguientes señalamientos de error:

**Por CPG (KLRA20240330):**

> **PRIMER ERROR:** ERRÓ DACO AL IMPORNERLE EL PAGO DE $15,200 POR CONCEPTOS DE HONORARIOS DE ABOGADOS A CPG, POR CPG INCURRIR EN UNA SUPUESTA CONDUCTA TEMERARIA AL INSISITIR NO TENER RESPONSABILIDAD BAJO LA LEY NÚM 130 Y EL REGLAMENTO NÚM. 2268.
> **SEGUNDO ERROR:** ERRÓ DACO AL IMPONERLE EL PAGO DE $20,000 A CPG POR CONCEPTO DE HONORARIOS DE ABOGADOS POR HABER INCURRIDO, ALEGADAMENTE EN TEMERIDAD POR NO HABER CORREGIDO LOS SUPUESTOS DEFECTOS

---

[16] Apéndice CPG, págs. 106-125; Apéndice Bird, págs. 48-67.
[17] Apéndice CPG, págs. 132-139; Apéndice Bird, págs. 68-75.
[18] Apéndice CPG, págs. 140-145.

DE CONSTRUCCIÓN QUE PRESENTÓ LA PROPIEDAD OBJETO DE LITIGIO.

**Por Bird (KLRA20240331):**

**PRIMER ERROR:** ERRÓ DACO AL DETERMINAR QUE CPG, SGCP Y BIRD ERAN SOLIDARIAMENTE RESPONSABLES DE REPARAR LOS DEFECTOS DE CONSTRUCCIÓN RECLAMADOS
**SEGUNDO ERROR:** ERRÓ DACO AL DETERMINAR QUE LAS RECLAMACIONES CONTRA BIRD NO HABÍAN CADUCADO, A PESAR DE HABER TRANSCURRIDO MUCHO MÁS DE DOS AÑOS DESDE LA FECHA DE LA COMPRAVENTA
**TERCER ERROR:** ERRÓ DACO AL APLICAR EL REGLAMENTO 7932
**CUARTO ERROR:** ERRÓ DACO AL IMPONERLE TEMERIDAD A BIRD

**II.**

**A. Revisión Judicial de Agencias Administrativas**

Sabido es, que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Transporte Sonnell, LLC v. Junta de Subastas de la Autoridad de Carreteras,* 2024 TSPR 82, 214 DPR ___, (2024); *Voilí Voilá Corp., et al. v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ___ (2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es por ello, que dichas determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. Id.; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). Así pues, la revisión judicial de una decisión administrativa se circunscribe a analizar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las

determinaciones de hecho realizadas por la agencia estuvieron sustentadas por prueba sustancial que surgió del expediente administrativo, y **(3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas.** *Otero Rivera v. Bella Retail Group,* 2024 TSPR 70, 213 DPR ___ (2024).

El Art. 4.006, de la Ley de la Judicatura de 2003, 4 LPRA sec. 24y, establece en su inciso (c) la competencia del Tribunal de Apelaciones. A esos efectos, dispone que este Foro conocerá mediante recurso de revisión judicial, las decisiones, *órdenes y resoluciones finales* de organismos o agencias administrativas. *AAA v. UIA,* 200 DPR 903, 910-911 (2018); *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527, 543 (2006); *Procuradora Paciente v. MCS,* 163 DPR 21, 33-34 (2004).

Por su parte, el Tribunal Supremo de Puerto Rico ha establecido que para que una orden emitida por una agencia pueda ser revisada ante el Tribunal de Apelaciones, deben cumplirse dos requisitos: (i) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia y (ii) que la resolución sea final y no interlocutoria. *Depto. Educ. v. Sindicato Puertorriqueño,* supra, pág. 543; *Procuradora Paciente v. MCS,* supra, págs. 34-35. Se entiende como final la orden o resolución emitida por la última autoridad decisoria o adjudicativa de la agencia administrativa. *Bird Const. Corp. v. A.E.E.,* 152 DPR 928, 935 (2000). Nuestro Alto Foro lo ha descrito como una orden o resolución que "le ponga fin al caso ante la agencia y que tenga efectos sustanciales sobre las partes". *Crespo Claudio v. O.E.G.,* 173 DPR 804, 812-813 (2008); *Comisionado Seguros v. Universal,* 167 DPR 21, 28-29 (2006).

**B. Ley Núm. 5 del 23 de abril de 1973, Ley Orgánica del Departamento de Asuntos al Consumidor**

El Derecho Administrativo es, precisamente, el mejor campo para observar la forma y manera en la que el gobierno ejecuta sus facultades y potestades, pues, aquel gobierno que establece normas y política pública sin la estructura y la capacidad de materializarlas ha de ser uno irrelevante. En ese sentido, las Agencias y el Derecho Administrativo son pieza fundamental del Estado y sus administradores en la ejecución de su política pública. Este nace como resultado de la necesidad del gobierno en generar conocimiento especializado para satisfacer las necesidades de una sociedad cada vez más compleja. Véase J. Echevarría Vargas, _Derecho Administrativo Puertorriqueño_, 5ta ed. rev., San Juan, Ed. Situm, 2023, págs. 1-4.

Como Regla general, las Agencias Administrativas son entidades creadas por la Asamblea Legislativa y adscritas al Poder Ejecutivo. En Puerto Rico la Sección 16 del Artículo III de la Constitución de Puerto Rico concede a la Asamblea Legislativa la facultad de crear, consolidar o reorganizar departamentos ejecutivos y definir sus funciones. Art. III, Sec. 16, Const. ELA, LPRA, Tomo I. De esta forma, la Asamblea Legislativa ha delegado a las agencias administrativas -adscritas al Poder Ejecutivo- una serie de facultades, a través de la ley orgánica o de leyes especiales. _R&B Power, Inc. v. Junta de Subastas ASG_, 2024 TSPR 24, 213 DPR ___ (2024); _FCPR v. ELA et al.,_ 211 DPR 521, 536 (2023).

Como parte de esa delegación de poderes, tradicionalmente, le son otorgadas funciones cuasi legislativas y _cuasi judiciales_ a las Agencias Administrativas. De la función cuasi legislativa se desprende el poder de reglamentar dentro de los límites y parámetros establecidos en su ley habilitadora. Mientras, que de la

función *cuasi judicial* se le confiere el poder de adjudicar controversias dentro de la pericia de la agencia. Véase *R&B Power, Inc. v. Junta de Subastas ASG*, supra; *Caribe Comms., Inc. v. PRTC*, 157 DPR 203, 211 (2002).

Cónsono con lo anterior, mediante la Ley Núm. 5 del 23 de abril de 1973, según enmendada, *Ley Orgánica del Departamento de Asuntos del Consumidor*, se crea la Agencia Gubernamental, del Departamento de Asuntos al Consumidor, conocido comúnmente como DACo. Esta agencia fue creada como una especializada con el propósito primordial de vindicar e implantar los derechos del consumidor y proteger los intereses de los compradores. Artículo 3 de la Ley Núm. 5 del 23 de abril de 1973, supra, 3 LPRA sec. 341b.

Cónsono con esta ley, para proteger a los compradores de vivienda en Puerto Rico y, con el fin de regular la industria de construcción de viviendas, se creó la Ley Núm. 130 del 13 de junio de 1967, 17 LPRA sec. 501 según enmendada, mejor conocida como *la Ley de la Oficina del Oficial de Construcción adscrita al Departamento de Asuntos del Consumidor*. Mediante esta, se le concedió el poder al DACo para (1) reglamentar la industria de la construcción de vivienda, (2) expedir licencias a urbanizadores y constructores de vivienda, (3) definir las prácticas indeseables en el negocio de la construcción, (4) reglamentar los contratos de opción y compraventa y, (5) autorizar la radicación, investigación y adjudicación de querellas a través de la celebración de vistas administrativas y autorizando la imposición de multas y penalidades. Art. 4, Ley Núm. 130, supra, 17 LPRA sec. 504.

Mientras, en el Art. 11 de la Ley Núm. 130, supra, 17 LPRA sec. 511, establece que DACo empleará todas las facultades y poderes otorgados en la Ley Núm. 5 de 23 de abril de 1973, supra. En concreto, resuelve que la agencia podrá investigar y adjudicar "a

tenor con lo dispuesto en los Artículos (6) y (15) de la Ley Núm. 5".
Art. 11, Ley Núm. 130, supra.

Precisamente, el Artículo 6(c), Ley Núm. 5, supra, 3 LPRA sec. 341e(c), no solo reafirma la facultad de "atender, investigar y resolver quejas y querellas", sino que también establece que "[*c]uando declare con lugar una querella, el Secretario ordenará al querellado perdidoso que haya procedido con temeridad que pague total o parcialmente los gastos incurridos por el Departamento en su tramitación*". Art. 6(c), Ley Núm. 5, supra.

### C. Responsabilidad del Contratista y el Urbanizador

En el Reglamento Núm. 2268 del Departamento de Asuntos al Consumidor, en su Sección 1 inciso (F) se define como urbanizador o constructor a la parte "vendedora" y toda persona que se dedique al negocio de la construcción en calidad de empresario o principal responsable de la promoción, diseño, ventas, construcción de obras de urbanización para viviendas, o de la construcción en grande escala de viviendas. En este sentido, no hace mucha distinción entre el dueño del proyecto como desarrollador, el contratista a cargo de la construcción de la obra y el vendedor que promociona su venta y que actúa como administrador de la propiedad.[19]

En su sección 10 inciso (j), establece que todo urbanizador o constructor incurrirá en práctica indeseable y, por lo tanto, será responsable por dejar de corregir cualesquiera de los defectos de construcción que se enumeran en los sub-incisos o, incluso, por cualquier otra anormalidad que no se encuentre en ellos enumerada. En este sentido, DACo debe considerar que el tiempo para corregir los defectos varía con el tipo de defectos y los retrasos

---

[19] El Reglamento 2268 es el Reglamento para Regular las Distintas Actividades que se lleven a cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico, vigente de manera continua desde el 16 de septiembre de 1977.

ocasionados por el comprador querellante, o sea, la disponibilidad de la propiedad para llevar a cabo la reparación. En aquellos defectos de construcción en que no se especifique un término para notificar al urbanizador o constructor, se aplicará *un término de notificación de dos (2) años*. Cónsono a esto, en Sección 10 (j)(8) y (j)(13) del Reglamento 2268, se establece que toda parte afectada tendrá treinta (30) días para notificar desperfectos con los pisos y las ventanas. Esta misma sección, inciso (j)(10), establece en sesenta (60) los días para notificar desperfectos en puertas.

Por su parte, el Artículo 1483 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 4124, establece la responsabilidad de un contratista por los vicios de construcción que **provoquen la ruina del edificio**.[20] En nuestro ordenamiento jurídico, para poder reclamar al amparo de ese Artículo, el promovente tiene que demostrar que **los vicios que sufre el edificio ocasionan su ruina**. Así las cosas, nuestro Tribunal Supremo de Puerto Rico ha reconocido la existencia de cuatro tipos distintos de ruina que puede sufrir un edificio: ruina total, ruina parcial, amenaza de ruina y ruina funcional. *Pacheco v Estancia*, 160 DPR 409, 420 (2003).

En este sentido, el nuestro Alto Foro Judicial ha expresado que cada una de estas categorías de ruina, contienen características únicas. Por ejemplo, existe ruina total cuando se compromete la solidez o estabilidad del edificio. Mientras, "la ruina parcial sería aquella que provoca el derrumbamiento de uno de los elementos estructurales del edificio, pero no su totalidad". Id. En cuanto a la amenaza de ruina, el Máximo Foro puertorriqueño establece que es el "que implica la degradación parcial de los elementos del edificio y

---

[20] Se hace referencia a los artículos del Código Civil de Puerto Rico, 1930, *hoy derogado,* por ser la ley vigente y aplicable a los hechos y controversias que en este caso nos ocupan.

que, a su vez, compromete su solidez estructural o parte de ésta". Id.

A pesar de esto, en nuestro ordenamiento no siempre es necesario que los vicios de construcción amenacen la estabilidad de un edificio para que se considere que éste está en ruina. A estos efectos, se considera que *un edificio se encuentra en estado de ruina funcional* cuando adolece de vicios que: "(1) amenazan la seguridad pública o estabilidad del edificio; (2) le causan un perjuicio grave al dueño; (3) tornan la obra en impropia para el uso a que se le destina, o (4) exceden las medidas de las imperfecciones que cabe esperar razonablemente en una construcción". Id, págs. 420-421. Es decir, que se afecta severamente su utilización y disfrute.

Sin embargo, a la hora de imponer responsabilidad al contratista por la ruina de un edificio, el Tribunal Supremo de Puerto Rico ha establecido que, "una vez aceptada la obra dicha responsabilidad opera solamente para aquellos vicios de construcción **que sean ocultos o que no hayan podido ser detectados al momento de comprar el bien inmueble**". Id. Esto es así, toda vez que, de haber sido detectados por el comprador, al amparo de nuestro Código Civil y para efectos del Art. 1483, se entenderán aceptados y eximen de responsabilidad al constructor.

Cónsono con lo esbozado, la Ley Núm. 130 del 13 de junio de 1967, supra, establece que las acciones para exigir responsabilidades por vicios o defectos de construcción, excepto aquellas que cualifiquen bajo el Artículo 1483 del Código Civil, **caducan por el transcurso de dos (2) años a partir del otorgamiento de las escrituras de compraventa**, proveyendo una causa de acción y protección, distinta a la del Art. 1483 del Código Civil, a favor del comprador de una propiedad con vicios de construcción. *Este término es de caducidad,* por lo que no puede ser interrumpido.

### D.    Doctrina de Caducidad

Sobre las figuras de prescripción y de *caducidad* es sabido que ambas persiguen evitar la incertidumbre y propiciar la estabilidad jurídica. No obstante, estas no deben confundirse entre sí. La *caducidad* no se encontraba definida expresamente en el Código Civil anterior, por lo que dependía de la jurisprudencia y de la doctrina. *Arzuaga et als. v. Empresas Brunet et al.*, 211 DPR 803, 817-818 (2023). Fue, entonces, definida por nuestra jurisprudencia como "la decadencia de un derecho o su pérdida por haber incumplido, en el plazo determinado, la formalidad o condición exigida por la ley". Id, en la pág. 817; *Rivera Marrero v. Santiago Martínez,* 203 DPR 462, 478 (2019).

Uno de los rasgos más importantes de la *caducidad* es que, contrario a la prescripción, no admite la interrupción ni suspensión del término. *Arzuaga et als. v. Empresas Brunet et al.*, supra, pág. 818; *González Rosado v. Echevarría Muñiz,* 169 DPR 554, 567 (2006). Es decir, la *caducidad* es radical y automática. Por lo tanto, se extingue el derecho a la causa de acción con el mero transcurso del tiempo. Id.

### E.    Honorarios de abogados

En cuanto a la imposición de honorarios, conforme a lo que establece la Ley Núm. 130, *supra,* y la Ley Núm. 5, supra, el DACo aprobó  el *Reglamento de Procedimientos Adjudicativos,* Reglamento 8034 del 13 de junio de 2011 (Reglamento Núm. 8034).[21] Lo anterior, con el fin de asegurar la solución justa, rápida y económica de las querellas presentadas ante o por el DACo y así promover un procedimiento uniforme para su adjudicación. En su Reglamento Núm. 8034, se encuentran las Reglas 27.3 y 27.4 sobre

---

[21] Es el Reglamento de Procedimientos Adjudicativos de DACo, vigente desde el 12 de julio de 2011.

Concesión de Remedios, y que facultan al DACo a imponer (1) pago de costas y honorarios de abogado a la parte perdidosa y (2) determinada la temeridad, el pago total o parcial de los gastos incurridos por la Agencia.

En este sentido, en la Regla 27.3, se establece que "[e]l funcionario, secretario o Panel de Jueces que presida la vista **podrá imponer a la parte perdidosa el pago de costas y honorarios de abogados**". Disponiéndose, además, que este procedimiento debe regirse por lo dispuesto en la Regla 44 de las Reglas de Procedimiento Civil de Puerto Rico de 2009. En ese sentido, a la par con la Regla 44, supra, a una parte que haya procedido con temeridad o frivolidad, "el DACo deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que entienda corresponda a tal conducta". Regla 44.1 (d), Reglas de Procedimiento Civil, supra, 32 LPRA Ap. III, R. 44.1 (d). Así también, atado a la imposición de temeridad y cónsono a lo esbozado en el Art. 11 de la Ley Núm. 5, supra, la Regla 27.4 del Reglamento Núm. 8034, establece que, adjudicada la temeridad, el Departamento podrá ordenar el pago total o parcial, a discreción del funcionario, de los gastos incurridos por DACo.

El concepto *temeridad* conlleva aquellas actuaciones de un litigante que lleven a un pleito que pudo evitarse, que provoquen la prolongación indebida del trámite o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos. Un litigante perdidoso actúa con temeridad cuando por su terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a asumir innecesariamente las molestias, los gastos y los inconvenientes de un pleito. *SLG González-Figueroa v. SLG et. al.,* 209 DPR 138, 145-149, (2022).

Es temerario quien niega totalmente su responsabilidad en los hechos que motivan la demanda cuando conocía o debió conocer que su negligencia causó o contribuyó al daño sufrido y obliga a la parte demandante a litigar extensamente su caso, especialmente el aspecto de la negligencia. Id, en la pág. 150; *Blás v. Hosp. Guadalupe*, 146 DPR 267, 335 (1998). Incluso, la parte es temeraria cuando entiende que la cuantía reclamada es exagerada, pero no acepta con franqueza la responsabilidad por sus actos con el fin de limitarse a litigar los daños reclamados y su valoración. *SLG González-Figueroa v. SLG et. al.,* supra, pág. 150; *Mercado v. American Railroad Co.*, 61 DPR 228, 237 (1943); *Reyes v. Aponte*, 60 DPR 890, 900 (1942). De esta manera asume voluntariamente el riesgo y las consecuencias de litigar un caso en el que la negligencia surge *prima facie. SLG González-Figueroa v. SLG et. al.,* supra, págs. 140-141.

La imposición de honorarios de abogado a la parte temeraria descansa en la sana discreción del juzgador. Así, cuando en su sana discreción un foro adjudicativo encuentra a una parte temeraria impone una sanción procesal que solo será variada en apelación si se demuestra que hubo abuso de discreción. Id, pág. 150; *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253, 277 (2021); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212–213 (2013); *Muñiz Burgos, Inc. v. Mun. de Yauco*, 187 DPR 665, 691–692 (2013); *Colón Santos v. Coop. Seg. Múlt. P.R.*, 173 DPR 170, 188 (2008).

**III.**

Como expresamos previamente, este caso fue *consolidado* por presentarse dos *Recursos de Revisión Judicial* sobre la misma controversia y *Resolución*. Así las cosas, y por tratarse de asuntos correlacionados, se atenderán *en conjunto* todos los señalamientos de error de cada recurrente. De un lado, el recurrente CPG aduce que erró el DACo tras imputarles temeridad por insistir en no tener

responsabilidad y por no haber corregido los defectos de construcción. Por otro lado, Bird arguye que erró el DACo al imputarle responsabilidad y solidaridad por los defectos de construcción, imputarle temeridad tras no reconocer que la acción contra ellos había caducado.

### A. Responsabilidad CPG y SGCP (KLRA20240330)

Como hemos expuesto anteriormente, el Reglamento Núm. 2268 del DACo, en su Sección 1 inciso (F) se define como urbanizador o constructor a la parte "vendedora" y toda persona que se dedique al negocio de la construcción en calidad de empresario o principal responsable de la promoción, diseño, ventas, construcción de obras de urbanización para viviendas, o de la construcción en grande escala de viviendas. De la misma forma, en su sección 10 inciso (j), establece que todo urbanizador o constructor incurrirá en práctica indeseable y, por lo tanto, será responsable por dejar de corregir los defectos de construcción. Añade, en la Sección 10 (j)(8) y (j)(13), que toda parte afectada tendrá treinta (30) días para notificar desperfectos con los pisos y las ventanas. Esta misma sección, inciso (j)(10), establece en sesenta (60), los días para notificar desperfectos en puertas.

Cónsono con lo esbozado, la Ley Núm. 130 del 13 de junio de 1967, supra, establece que las acciones para exigir responsabilidades por vicios o defectos de construcción, excepto aquellas que cualifiquen bajo el Artículo 1483 del Código Civil, *caducan por el transcurso de dos (2) años a partir del otorgamiento de las escrituras de compraventa.* Es decir, que es deber de los afectados el notificar de acuerdo con lo establecido en el Reglamento y, de no ser subsanados, querellarse dentro del término de dos (2) años a partir del cierre.

En el caso ante nos, CGP y SGCP, actuaron indistintamente como dueños y urbanizadores del proyecto. Así, desde el 29 de junio de 2013, les fue notificado el mismo día del otorgamiento de la escritura a los desarrolladores, de los defectos a subsanar en la propiedad. Los días 27 de noviembre del 2013, 26 de diciembre de ese mismo año y 15 de mayo de 2014 los recurridos hicieron envío de varias cartas en las que recalcaron la necesidad de subsanar los defectos. Tan es así que, según las determinaciones de hecho, durante los meses de noviembre de 2013 y enero de 2014, estos realizaron unas obras en el apartamento. Sin embargo, no se atendieron todas las deficiencias esbozadas en el listado. Por tal motivo, el 15 de mayo de 2014, los recurridos, hacen envío de otra carta a CPG y SGCP reiterando su reclamo sobre las deficiencias que quedaban sin subsanar. Tras la falta de acción de los urbanizadores, los recurridos acudieron a querellarse contra CPG y SGCP ante DACo el 21 de noviembre de 2014.

Desde inicios del pleito en DACo, y a sabiendas de su participación y su rol en el Proyecto, CPG insistió en negar su responsabilidad. A pesar de asumir el rol de urbanizador y representante de SGCP en el Proyecto, incluso, tomando acciones en múltiples ocasiones como responsable de inspeccionar y subsanar las deficiencias.

Por lo tanto, constando el rol de CPG en el proyecto, las notificaciones adecuadas por parte de los recurridos e, incluso, la interposición de la querella oportunamente contra CPG y SGCP, no existe forma en que se pueda interpretar que los urbanizadores no sean responsables por dejar de corregir los defectos de construcción señalados y adjudicados por DACo.

### B. Honorarios

Es sabido que, por virtud de la Ley Orgánica y sus reglamentos, DACo tiene la facultad de imponer honorarios por temeridad a una parte que niega totalmente su responsabilidad en los hechos que motivan la demanda cuando conocía o debió conocer que su negligencia causó o contribuyó al daño sufrido y obliga a la parte demandante a litigar extensamente su caso, especialmente el aspecto de la negligencia. Así también, se actúa con temeridad cuando por su terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a asumir innecesariamente las molestias, los gastos y los inconvenientes de un pleito.

Por otro lado, es de conocimiento general que la imposición de honorarios y la declaración de temeridad descansa sobre la sana discreción del juzgador. La declaración de temeridad por DACo permite tanto la imposición de costas y honorarios de abogados como la orden de pago total o parcial de los gastos incurridos por la agencia. Para revertir la misma, es necesario que se pruebe que el foro adjudicativo incurrió en abuso de discreción. En ese sentido, no basta con la mera alegación, puesto que el valor probatorio recae sobre el recurrente en alzada.

En este sentido, los recurridos pudieron probar -y así lo adjudicó DACo- que CPG actuó en todo momento con facultades de urbanizador y desarrollador, incurriendo en prácticas indeseables, según definidas por la Reglamentación aplicable. De igual forma, a sabiendas de su participación y sus facultades como urbanizador, vendedor y administrador del proyecto, insistieron en negar responsabilidad sobre su verdadero rol. Asumiendo actitudes desprovistas de fundamentos con el único fin de negar

responsabilidad. Adicional a esto, a pesar de lo acordado con los recurridos sobre la subsanación de vicios en la construcción que fueron reiteradas oportunamente y en varias ocasiones por escrito, CGP y SGCP dejaron de corregir los defectos señalados por estos. De esta manera, a través de su inacción, incurrieron en práctica indeseable y en temeridad, ocasionando un litigio que duró desde el 21 de noviembre de 2014 hasta el 7 de febrero de 2024 con un total de 22 vistas. Por si fuera poco, no se logró rebatir ante este Foro la imposición de los honorarios, tras no demostrar abuso de discreción en dicha adjudicación.

Por tal motivo, se sostiene la determinación de temeridad y la imposición de honorarios de abogados solidariamente contra CPG y SGCP por la cantidad de $20,000.00 y se elimina la partida de honorarios por $15,200.00, toda vez que lo que corresponde en derecho es la imposición del pago solidario por los gastos incurridos por la agencia.

### C. Responsabilidad Solidaria de Bird (KLRA20240331)

En cuanto a los señalamientos de Bird existen dos fundamentos esenciales a atender y que, por lo tanto, confirman o hacen innecesario resolver los otros dos señalamientos de error, estos son, a saber: (1) la imposición de solidaridad en la responsabilidad por los vicios de construcción y (2) la no aplicabilidad del término de caducidad sobre la reclamación.

Lo cierto es que, sobre la causa que le sobrevive a los querellantes, bajo la reglamentación de DACo, no se hace la distinción entre los contratistas, los urbanizadores o desarrollador, haciéndoles responsables solidariamente ante el consumidor. Pues, se establece que todo urbanizador o constructor incurrirá en práctica indeseable y será responsable si no corrige los defectos de construcción que les *sean debidamente notificados*. Ahora bien, la

Ley Núm. 130 del 13 de junio de 1967, supra, establece que las acciones para exigir responsabilidades por vicios o defectos de construcción ***caducan a los dos (2) años de realizada la compraventa,*** excepto en los casos cuya causa sea por el Art. 1483 del Código Civil de 1930. También es cierto que, respecto a los co-causantes, nuestro ordenamiento jurídico establece la necesidad de interrumpir los términos con la interposición oportuna de la demanda o querella contra cada uno de los co-causantes individualmente.

Es necesario que se cumpla con el término establecido en la ley debido a que, al ser *de caducidad*, no existe fundamento ni justa causa para rescatar o revivir la acción contra el causante aun cuando en un inicio pudiera ser responsable. En este sentido, hay que diferenciar entre la prescripción y *la caducidad*. Los términos de prescripción pueden ser interrumpidos, ya sea con una carta de notificación o en reclamación e, incluso, con justa causa. Sin embargo, cuando hablamos *de caducidad* se hace referencia a *un término fatal* que no permite prórroga alguna. Es decir, que una vez vence el término, se extingue la causa de acción contra el causante.

Así las cosas, en el caso ante nos, los querellantes notificaron los defectos a CGP y SGCP según lo establece el Reglamento 2268, supra. Sin embargo, debieron haber incluido a Bird en la querella dentro del término fatal de dos (2) años desde el otorgamiento de la escritura de compraventa. Si bien sobrevive la causa de acción contra CPG y SGCP tras querellarse oportunamente ante DACo, era menester que incluyeran a Bird en las reclamaciones dentro de este término. Habiéndoles traído al pleito después de haber caducado la acción, no procede la imposición de responsabilidad solidaria contra Bird. De la misma forma, tras no ser notificados y al no proceder responsabilidad de Bird, tampoco procede la imposición de la temeridad.

Distinto hubiera sido de existir responsabilidad por ruina bajo el Art. 1483 del Código Civil de 1930, supra. Sin embargo, en el caso ante nos, DACo determinó que los recurridos no cumplen con la determinación de un estado ruinoso de la propiedad, sosteniendo solamente las reclamaciones sobre los goznes oxidados, los marcos de las puertas deslizantes y las losas. Por lo que la única acción que tendrían es la que proveen los reglamentos de DACo y la Ley 130, supra, con caducidad de dos (2) años. Del expediente surge que la querella se presentó oportunamente contra CPG y SGCP. El otorgamiento de la escritura de compraventa se efectuó *el 29 de junio de 2013* y, aunque la querella se presentó el 21 de noviembre de 2014 (dentro del término), no fue hasta *el 28 de julio de 2015* que DACo *motu proprio* decide incorporar a Bird en el pleito. De este modo, habiendo transcurrido *más de dos (2) años desde el otorgamiento de la escritura de compraventa,* no existía causa contra Bird tras haber caducado y, por lo tanto, no se le puede imputar responsabilidad ni solidaridad sobre los vicios adjudicados en el pleito.

**IV.**

Por los fundamentos antes expuestos, *modificamos* la *Resolución* en cuanto a la determinación de responsabilidad de Bird, eliminando, además, la imposición de honorarios contra dicha entidad. No obstante, *confirmamos* la temeridad y responsabilidad solidaria de CPG y SGCP por la cantidad de $20,000.00. Finalmente *revocamos* la imposición de $15,200.00 por concepto de honorarios de abogados por temeridad de dichas entidades al ser una imposición duplicada. No obstante, *devolvemos* a DACo para que, conforme al Reglamento 8034, Art. 27.4, adjudique los gastos incurridos en la tramitación de la querella, tomando en consideración la temeridad desplegada por CPG y SGCP.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones